**UNITED STATES**

v.

**Donald R. DIXON, 449 08 5101, Seaman Recruit (E–1), U. S. Navy.**

**NCM 79 0147.**

U. S. Navy Court of Military Review.

Sentence Adjudged 21 Sept. 1978.

21 March 1980.

LT David S. Durbin, JAGC, USNR, Appellate Defense Counsel.

LT J. G. Van Winkle, JAGC, USNR, Appellate Government Counsel.

LT Christine M. Yuhas, JAGC, USN, Appellate Government Counsel.

Before CEDARBURG, C. J., and FERRELL and DONOVAN, JJ.

DONOVAN, Judge:

After losing several pretrial motions, appellant pleaded guilty before a general court-martial military judge to one unauthorized absence and an assault with intent to commit rape, violations of Articles 86 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C.A. §§ 886, 934. He was sentenced 21 September 1978 by officer members to a dishonorable discharge, confinement at hard labor for 5 years and forfeitures of $350.00 per month for 60 months. The convening authority did not honor the pretrial agreement but attempted to do so later by a nugatory supplementary court-martial order. We shall take corrective action in that regard.

· Appellant submits that seven errors occurred. In oral argument appellate defense counsel modified the relief originally requested and argues now that the sentence be set aside and a rehearing be authorized. We shall discuss the errors in the sequence raised but, finding them unmeritorious, we affirm the findings and a modified sentence.

## I

THE COURT LACKED JURISDICTION TO TRY THE ACCUSED BECAUSE THE MEMBERS WERE NOT SWORN PRIOR TO THE *VOIR DIRE*.

The members who sentenced appellant were administered the standard members' oath on Monday, 18 September 1978. (R. 370). Paragraph 114*b, Manual for Courts-Martial, 1969 (Rev.)* (MCM); JAGMAN, § 0111c. All *voir dire* had been conducted the prior week without any oath having been administered to the members. The military judge did not announce that the court was assembled until Monday. The military judge, Judge K, was a replacement judge who had conducted neither the judicial *voir dire* nor presided over counsels' *voir dire*. Appellant alleges that the utterance of the words of assembly was improperly postponed until Monday, although he is unable to articulate specific prejudice thereby resulting. We will address the substitution of Judge K for Judge R later.

Article 42(a), UCMJ, states in part: "Before performing their respective duties . . . members of a general . . . courts-martial . . . shall take an oath to perform their duties faithfully. The form of the oath, the time and place of the taking . . . shall be as prescribed in regulations of the Secretary concerned . . . ." Paragraph 61*j*, MCM, states:
> j. Assembly of the court. Following the procedure outlined by this paragraph (61), the military judge . . . may announce that the court is assembled. The court is assembled when, after the members have gathered in the courtroom to start the trial, the military judge . . . has announced that the court is assembled . . . .

Paragraph 61*k*, MCM, states:
> k. Applicability to Article 39(a) sessions. Immediately after commencing an Article 39(a) session (53d), the military judge should insure that the court is properly constituted by following the procedure in b, c, d, e, f, and i above. After insuring that the court is properly constituted, the military judge may proceed to take up the matters in g and h above. See appendix 8a.

In regard to the procedure of examining detailed members, paragraph 62*b*, MCM, notes in part that "[i]t is optional with the questioning party whether the member being questioned shall be sworn to testify as to his competency as a member before answering these preliminary questions." The record shows that this trial defense counsel

did not, for whatever motive, request that the members be placed under oath.

The fourth subparagraph of § 0113a, JAGMAN, states in part that "[w]hen a finding of guilty has been so entered, the military judge need only inform the court members *after assembly* that the accused has been arraigned, a plea of guilty has been entered and accepted, and he has been found guilty." (Emphasis supplied). Paragraph 62d, MCM, notes in part that "challenges should be made immediately following assembly of the court."

In this case, the original military judge disposed of all challenges before adjourning on Friday, 15 September. It is implied and appellant urges that a *de facto* assembly of the court had occurred on Friday, before relief of the original military judge. The Government argues that assembly occurs only when the military judge announces that it has occurred and that this did not happen until the replacement judge so announced on Monday. The reasoning behind that view, applicable here, is that the members' duty was to sentence the appellant and that the *voir dire* proceeding was merely a screening process designed to determine if they were fit to perform that duty. The fact that two different oaths may be administered to a prospective member signifies that one is administered before testing, the other upon acceptance. There are distinguishable purposes for these oaths; one is concerned with testing qualifications for membership on the particular court, and the other is to ensure faithful performance of duties upon acceptance.

The trial guide set out in the *Manual for Courts-Martial*, Appendix A8, indicates at pages A8–11 and 12 that the members are normally sworn, the military judge announces that the court is assembled and then *voir dire* and challenging ensue. We note, however, that the guide at page A8–13 envisions that this sequence shall occur where an accused is then subsequently arraigned. This appellant had already been arraigned and had pleaded guilty at an Article 39(a), UCMJ, session before the military judge alone. The text at page A8–13 notes that possible variation but does not specify, by repetition, a sequence of steps for assembly—*voir dire*—challenges when, as here, the members are to perform only the sentencing function. Inasmuch as the appendix is a guide, the same sequence presumably applies; but just as presumably, it may be varied in order to conform practice to prudent judicial administration consonant with due process and economical use of time.

■ Although trial defense counsel did not seek to have the Oath for Questioned Member administered to the detailed members before *voir dire*, as authorized by paragraphs 62b and 114g, MCM, relying only on the later administered Oath for Court Members set out in paragraph 114b, MCM, we perceive no prejudice to appellant in the oath selection and oath taking procedure. This military judge apparently knew he would be unavailable to conclude more than the preliminary matters and affirmatively elected to delay announcing assembly of the court, anticipating that another judge would preside.

In *United States v. Hill*, No. 72 0365 (N.C.M.R. 20 April 1972), we held that "[a] court-martial with members is 'assembled' as soon as the members are sworn . . . before the voir dire and challenge proceedings begin." Appellant would have us assign no talismanic value to the words "The court is assembled." Yet special significance applies to certain utterances at trial; for example, a proper arraignment and the posing of the question "How do you plead?" are conditions precedent to proceeding to trial *in absentia* when an accused is voluntarily absent. *See* paragraph 11c, MCM; *United States v. Peebles*, 3 M.J. 177 (C.M.A. 1977); *United States v. Houghtaling*, 2 U.S. C.M.A. 230, 8 C.M.R. 30 (1953). Other trial events are demarcated by specific events: the announcement of sentence by its utterance, *see* Article 53, UCMJ; paragraph 76c, MCM; *United States v. Hendon*, 6 M.J. 171 (C.M.A.1979), the announcement of findings, *see* paragraph 74g, MCM; *United States v. Hitchcock*, 6 M.J. 188 (C.M.A. 1979), and the arraignment of an accused and any attempt to thereafter arraign him on additional charges at the same trial, *see* paragraph 65b, MCM; *United States v. Butler*, 3 M.J. 211 (C.M.A.1977).

Every trial event cannot occur simultaneously. A suggested guide, Appendix A8, MCM, is a point of departure to participants which offers a predictable, orderly way of conducting a trial. While conviction cannot precede arraignment, no constitutional or due process bar prevents the oath taking variance which occurred here. The fatal errors which occurred in *United States v. Gary*, 44 C.M.R. 354 (A.C.M.R.1970), and *United States v. Kendall*, 17 U.S.C.M.A. 561, 38 C.M.R. 359 (1968), had not occurred here because the members were not only sworn but were sworn before hearing any evidence on sentencing.

The replacement judge prudently offered to reopen *voir dire*. While this signified that preliminary matters were still pending, it may also have signalled Lieutenant Colonel K's awareness that the defense had been sharply restricted during its attempts to conduct *voir dire*. In this vein, we cannot avoid commenting with disfavor on the overly zealous technique used by the prosecutor and permitted by the military judge in this case.

■ The initial military judge posed many questions to the original panel, some of which were all-inclusive questions such as the following: "Do any of you harbor any thoughts or feelings regarding punishments which might affect your ability to award a completely fair, impartial and appropriate sentence in this case?" (R. 269). Defense counsel then commenced his *voir dire* and had asked only so many questions and received so many answers as occupy some two pages in the record when virtually all subsequent questions were objected to, and sustained by the judge. The prosecution referenced the all-inclusive questions the judge had posed, to which the members had all quite naturally expressed agreeable responses, and thereupon argued that the defense counsel was asking questions that had been "asked and answered." The objection "asked and answered" is a proper one to use when opposing counsel unnecessarily reiterates a point already established. This defense counsel, however, was properly posing *specific* questions to test the validity

of the *general* disclaimer of bias to which the members had assented in monosyllables or nods. The quoted judicial inquiry asked if the members had any "feelings" which "might affect" them.

■ Humans are not reliable gauges of their own temperatures; counsel *voir dire* is a thermometer seeking an impartial reading. Efforts to test the members for bias by posing specific questions were, however, repeatedly foreclosed by the trial judge who perhaps over anticipated a fishing expedition by this counsel. Trial defense counsel addressed the military judge in this regard:

> [Y]ou asked the general questions about sentencing, however, I believe my questions are a little more specific and maybe a little more probing into any possibilities toward opinions that may be formed at this time concerning an appropriate sentence. . . .
>
> MJ: Counsel, I feel that that matter has been adequately covered by my questions and the objection is sustained.

(R. 303). The defense counsel therefore was not allowed to ask a single member if he thought a punitive discharge would be a necessary element of any eventual sentence. (R. 303). Such truncated *voir dire* was error.

■ The examples noted are representative of a sharply curtailed *voir dire* and are not within the even handed procedures contemplated in *United States v. Slubowski*, 7 M.J. 461 (C.M.A.1979), announced subsequent to these proceedings. We would normally be inclined to find this aborted *voir dire*, appropriately objected to by the defense, as a violation of due process such as would require a rehearing on the sentence; any error, however, was waived on September 18 when the defense declined to reopen *voir dire* at Judge K's invitation. Accuseds, and their families who occasionally attend trials, should perceive indicia of fairness, not a stingy allotment of the minimum minutes required for a conclusion. The practice, therefore, of posing several generic questions by a judge and routinely denying, as "asked and answered", even single specific questions designed to test those general conclusions should be avoided.

## II

### THE MILITARY JUDGE WAS IMPROPERLY RELIEVED DURING THE COURSE OF TRIAL.

Appellant argues that there had been a *de facto* assembly of the court when the members entered and *voir dire* began. He concludes, therefore, that the court was unquestionably assembled before it adjourned on Friday, 15 September 1978, with Judge R presiding and that a judge substitution improperly occurred. No specific prejudice is indicated as having resulted from Judge K's assumption of the bench on Monday. All agree that the final five members had been detailed, instructed and subjected to *voir dire* before Friday's adjournment. Lieutenant Colonel K reinformed appellant of his forum rights, his presentencing rights and invited counsel to reopen *voir dire*. He then had the members sworn, (R. 370), and announced assembly of the court. (R. 371). The original judge had presided over preliminary matters, Article 39(a), UCMJ, on 12, 13, 14 and 15 September. The guilty plea was accepted and *voir dire* commenced on 14 September; on 15 September it was concluded. Clearly, Judge R could have administered the oath, paragraph 114*b*, MCM, and announced before adjournment that the court was assembled, paragraph 61 *j*, MCM.

Appellant argues that since assembly had occurred on Friday before the original judge departed on annual leave, a violation of the *Manual* provision regarding judge substitution occurred. Paragraph 39*e*, MCM, reads in pertinent part:

New military judge. The military judge may not be replaced during the progress of a trial except for physical disability, as a result of challenge, or for other good cause. As in 37b, good cause contemplates a critical situation such as emergency leave or military exigencies, as distinguished from the normal conditions of military life. . . .

The Court of Military Appeals has interpreted the word "trial" in *United States v. Smith*, 3 M.J. 490 (C.M.A.1975), wherein the relief of the judge was in issue:

As we interpret these provisions, the term "trial" contemplates a trial on the merits rather than preliminary sessions and the resolution of preliminary matters.

*Id.* at 492 n.4. So viewed, appellant's motions and guilty pleas were all "preliminary matters" and the trial, as such, started Monday when Lieutenant Colonel K so announced.

■ Since assembly did not occur until the judge so announced on 18 September, paragraph 39*e* is inapplicable because the trial, as such, had not begun to progress to sentencing. There was no error in the relief. Accordingly, we need not address appellant's ancillary attack on the manner in which the replacement judge was detailed. The facts of this case distinguish it from the sequence of changes criticized in *United States v. Weishaar*, 5 M.J. 889 (N.C.M.R. 1978).

Rather than close this issue merely upholding the judge's conduct, we feel it proper to commend Judge R for doing as much as possible before commencing leave, rather than supinely declining to touch the case for fear of an attack on the basis and manner of his substitution. Judges are busy and must economically manage court time.

## III

### THE MILITARY JUDGE ERRED, TO THE SUBSTANTIAL PREJUDICE OF THE ACCUSED, BY REFUSING TO ALLOW THE ACCUSED AND HIS SISTER TO TESTIFY CONCERNING THE ACCUSED'S USE OF MARIJUANA IN THE PRESENCE OF THE ACCUSED'S RECRUITER.

■ Appellant moved to dismiss all charges on the basis of lack of jurisdiction due to recruiter misconduct. After hearing evidence, it was properly denied. In reading the dialogue, (R. 44–46), it is easily inferred that appellant may have intended to answer yes, instead of no, to the question whether he himself had smoked marijuana at a party attended by his recruiter a few days before he enlisted. The cold record suggests that a possibly erroneous answer

occurred. But the trial judge was there and heard the pause, if any, between question and answer, listened to the reply and detected the demeanor in which it was uttered. Since the judge adamantly refused to allow the defense counsel opportunity to rehabilitate this reply, we must conclude that the judge either was intent on foreclosing a fair inquiry or that he was positive that the first reply was frank and honest. We adopt the latter view. So construed, there was no error in denying further inquiry as it would have been a legally irrelevant and time-consuming effort. The civilian former recruiter testified, as did his officer supervisor, that waivers for marijuana use were easily obtained and that no enlistee quota pressures existed in the Houston, Texas locale.

■ It was error to deny the sister's testimony which would have rebutted the former recruiter's testimony that only drinks were served at the party. Part of appellant's theory is that the recruiter was overly friendly with his sister; however, now released from active duty, the former recruiter would have little motive to perjure himself while the sister's bias to help her brother facing this serious charge survives. Since appellant's and his sister's credibility were weighed by the judge on the motion to dismiss, we find no prejudicial error in the manner in which the sister's testimony was received. Moreover, a waivable regulatory disqualification such as this, for which a recruiter deliberately fails to seek a waiver, does not constitute a bar to jurisdiction. *United States v. Stone*, 8 M.J. 140 (C.M.A. 1979).

## IV

THE MILITARY JUDGE IMPROPERLY DENIED THE DEFENSE MOTION TO ORDER ADMINISTRATIVE CREDIT FOR THE TIME APPELLANT SPENT IN ILLEGAL PRETRIAL CONFINEMENT. *UNITED STATES v. LARNER*, 1 M.J. 371 (C.M.A.1976).

On 8 May 1978, appellant terminated a period of unauthorized absence exceeding 2 months by surrendering to military authorities. He had just been punished at nonjudicial punishment proceedings for a month-long unauthorized absence from 3 January to 2 February 1978 and was with his unit, serving restriction, when he went UA on 22 February. Between 10 February, his date of punishment for the month-long absence, and 22 February, the start of the subsequent longer absence, he was found guilty, again at mast proceedings, on 16 February of disobedience of a lawful order and disrespect to a commissioned officer.

Appellant was placed in pretrial restriction 12 May 1978 and, apparently compliant, was released therefrom on 28 May. On 25 June 1978, he was arrested on this sexual assault (and a related robbery) charge and confined the next day, remaining there until this trial was completed on 21 September 1978.

■ Appellate defense counsel urges that the stepped, or minimally required restraint, approach described in *United States v. Heard*, 3 M.J. 14 (C.M.A.1977), was not employed herein and appellant was therefore subjected to illegal pretrial confinement. We note that appellant was convicted of assaulting a woman, who was a stranger to appellant, with a knife with the intent to rape. He fled the scene and had to be subdued by force. The military magistrate also considered other charges appellant faced: robbery and assault with intent to commit sodomy. Under the circumstances of this case, we are satisfied that the pretrial confinement was necessary to ensure appellant's presence for trial and that, given his history of unauthorized absences, due process was not violated by command escalation to the highest step: pretrial confinement. *United States v. Burke*, 4 M.J. 530 (N.C.M.R.1977).

## V

THE MILITARY JUDGE ERRED IN REFUSING TO CONSIDER APPELLANT'S MOTION TO SUPPRESS CERTAIN ALLEGED CONFESSIONS TO THE SUBSTANTIAL PREJUDICE OF APPELLANT.

■ For reasons set out in *United States v. McIver*, 4 M.J. 900 (N.C.M.R.1978), this

error is rejected. Appellant waived the issue by his plea of guilty and we see no injustice or due process violation in the proceedings below.

## VI

### THE ACCUSED WAS DENIED HIS RIGHT TO A SPEEDY TRIAL.

Appellant spent 78 days in pretrial confinement from 26 June 1978 to the start of his trial. On 10 July 1978 defense counsel formally requested speedy trial by demand to the accused's special court-martial convening authority. We agree with appellant that there is a due process right to a speedy trial which existed before any court fashioned rule based on a calendar count and which survives today. *United States v. Johnson*, 1 M.J. 101 (C.M.A.1975); *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971).

■ Finding the *Burton* presumption inapplicable here, we apply a functional analysis to the facts of this case. *United States v. Amundson*, 23 U.S.C.M.A. 308, 49 C.M.R. 598 (1975); *United States v. Hagler*, 7 M.J. 944, 947 (N.C.M.R.1979), citing *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Upon consideration of the length of the delay, its circumstances (including an offer to appellant to separately dispose of the unauthorized absence charge at a lower forum), the reasons for the delay and the chronology of events, (Appellate Exhibit IV–A), his demand for speedy trial and the minimal prejudice resulting from the delay, we conclude that there was no denial of due process in the timing of the trial proceedings. *United States v. Powell*, 2 M.J. 6 (C.M.A.1976).

## VII

THE MILITARY JUDGE ERRED IN REQUIRING THE DEFENSE TO COMPLY WITH PARAGRAPH 115, MCM, 1969 (Rev.) AND SOUTHWESTJUDCIRINST 5813.1B OF 1 AUGUST 1978 (AE XI), AS ORALLY ANNOUNCED BY THE JUDGE (R. 12–13), WITH RESPECT TO THE WITNESSES REQUESTED IN AE XII.

Trial defense counsel requested that the requirements of paragraph 115, MCM, and of applicable portions of local court rules be waived in order to prevent improper governmental discovery of the defense case. This was denied; appellant here argues a violation of equal protection of the law occurred because the Government was not similarly bound to disclose its witnesses' testimony.

■ Production of witnesses requires some showing of materiality. *United States v. Jouan*, 3 M.J. 136 (C.M.A.1977); *United States v. Willis*, 3 M.J. 94 (C.M.A. 1977); *United States v. Carpenter*, 1 M.J. 384 (C.M.A.1976). The defense apparently sought to surprise the Government on its jurisdictional motion by the content of appellant's sister's testimony. (R. 30). *United States v. Frederick*, 7 M.J. 791, 805 (N.C. M.R.1979). Objections to paragraph 115a, MCM, have turned on the notion that the trial counsel could screen out reasonable defense requests. *United States v. Carpenter, supra* at 386 n.8.

The military judge here, however, reviewed the requests and monitored the Government inquiry, *United States v. Arias*, 3 M.J. 436 (C.M.A.1977), albeit not *in camera* as requested, to ensure that no greater disclosure was exacted than that establishing materiality. The trial counsel, while an adversary, bears the added duty as the Government's action officer in obtaining

witness travel reimbursements and support matters. JAGMAN, § 0138. The Government's financial obligation to obtain defense witnesses was recently emphasized. *United States v. Williams*, 3 M.J. 239 (C.M.A.1977). Some preview of witness materiality, however, is reasonable in order to avoid undue repetition of court time in hearing witnesses who are merely cumulative. *Id.*

 From a careful examination of the record, we conclude that trial defense counsel, in resisting any disclosure of witness testimony, overestimated and misconstrued his duty which was merely to disclose no more than some comment on the witnesses' subject matter such as would enable the judge to rule with some light. *United States v. Tangpuz*, 5 M.J. 426, 429 (C.M.A. 1978); *United States v. Vietor*, 3 M.J. 952 (N.C.M.R.1977). This minimal intrusion is still far from balancing the discovery of the Government's case already afforded appellant by virtue of Article 32, UCMJ, proceedings. We perceive no violation of due process under these proceedings and reject this error.

Accordingly, the findings are affirmed and, in order to honor the pretrial agreement, only so much of the sentence as provides for a bad-conduct discharge, confinement at hard labor for 5 years and forfeiture of $350.00 per month for 60 months, as approved on review below, are affirmed.

Chief Judge CEDARBURG and Judge FERRELL concur.