UNITED STATES, Appellee,

v.

Donald R. DIXON, Seaman Recruit,
U.S. Navy, Appellant.

No. 43,653.
NCM 79–0147.

U.S. Court of Military Appeals.

Aug. 6, 1984.

For Appellee: *Lieutenant Ronald S. Wasilenko*, JAGC, USNR, (argued); *Commander Jay M. Siegel*, JAGC, USNR and *Commander W.J. Hughes*, JAGC, USN (on brief).

For Appellant: *Commander David C. Larson*, (argued); *Lieutenant Commander David S. Durbin*, JAGC, USNR (on brief).

*Opinion of the Court*

EVERETT, Chief Judge:

Appellant's guilty pleas led to his conviction by general court-martial of unauthorized absence and assault with intent to rape, in violation of Articles 86 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 886 and 934, respectively. Thereafter, the officer members sentenced appellant to a dishonorable discharge, confinement at hard labor for 5 years, and forfeiture of $350 pay per month for 60 months. The convening authority approved these results, except for reducing the nature of the discharge to bad-conduct to conform to the pretrial agreement, and the Court of Military Review affirmed. 8 M.J. 858 (N.C.M.R.1980).

We have carefully considered these two issues in this appeal:[1]

I

WAS THE MILITARY JUDGE IMPROPERLY RELIEVED DURING THE COURSE OF TRIAL?

II

WHETHER THE VOIR DIRE OF THE COURT MEMBERS WAS IMPROPERLY RESTRICTED BY THE MILITARY JUDGE?

Finding prejudicial error, we must reverse.

I

Judge Redding initially was detailed to appellant's court-martial by the convening

---

1. We also granted review of appellant's contention that he deserved sentence credit for pretrial confinement served. *See United States v. Allen,* 17 M.J. 126 (C.M.A.1984). We need not rule now on this matter. *See United States v. Clark,* 17 M.J. 431 (C.M.A.1984).

authority. Over the course of several days, appellant litigated several pretrial motions and entered pleas which Judge Redding accepted as provident.[2] After the members were subjected to *voir dire*, challenges caused the size of the court to fall below quorum. The convening authority detailed additional members; further *voir dire* was conducted; and other challenges were exercised. At this point, Judge Redding adjourned the trial for the weekend.

On Monday, the trial participants returned to the courtroom to find Judge Kaye presiding. He had been detailed that morning by the convening authority in place of Judge Redding; and he announced that

the Convening Authority detailed me, when advised by the Circuit Military Judge, that I would be available to preside at this time and that Judge Robert K. Redding would not. I have familiarized myself with the prior proceedings to the extent that I am aware of the stage in which the case now stands and of Judge Redding's rulings on the matters presented to him. His previous rulings of course constitute the law of the case.

Next, Judge Kaye inquired whether the defense wished to challenge him for cause and was informed that, although the defense had no challenge for cause, it objected

to the Convening Authority's appointment of a new Military Judge at this time because the Defense believes in fact assembly of the Court has occurred and the relieving of a Military Judge simply because the old judge is going on leave is not a proper reason. Good cause must be shown. The Defense does not believe that good cause [sic] is such a proper reason. Therefore, we would object to the relief of Captain Redding for those reasons.

The objection was "noted for the record," after which Judge Kaye reapprised Dixon of his forum and presentencing rights.

2. Appellant also pleaded not guilty to two offenses subsequently withdrawn by the Govern-

The court members were summoned to the courtroom and were sworn by the trial counsel. Thereafter, Judge Kaye remarked:

I know you have been through a lengthy voir dire proceeding *but the Court is now assembled* and I am going to again extend to counsel the opportunity to pursue voir dire at this time.

(Emphasis added). Defense counsel, in declining this invitation, stated:

Your Honor, the defense, Thursday and Friday, did conduct a voir dire and we do wish to preserve for appeal, any issues that might have been created during that time, however, I think at this point in the proceedings, the defense would not like to put the Court members through any additional proceedings. I know they have been waiting for quite a long time. In the case of Commander Wanner and Lieutenant Lowman, they have been waiting for several days to begin hearing evidence, and I know they have been anxious to do so. So without waiving any issues that previously arose, we are prepared to offer evidence at this time.

The judge then gave general instructions to the court members and the presentation of evidence began during the presentencing proceedings.

II

Appellant's attack on Judge Kaye's authority to preside at his court-martial is two-pronged: (1) the substitution was presented to the convening authority as a *fait accompli* by the circuit's chief judge, and so the convening authority did not exercise his discretion as to whether any substitution should be made or, if so, who the new judge should be; and (2) "good cause" was required for the substitution at this time, and Judge Redding's annual leave was not "good cause."

A.

An attachment to appellant's Final Brief in this Court reflects that the Southwest

ment.

Judicial Circuit Docket Clerk in Judge Redding's office advised a paralegal in the office of the convening authority's staff judge advocate that Judge Redding was about to begin a period of annual leave and that the judge had obtained the services of Judge Kaye, the senior general court-martial judge of the Sierra Judicial District, for the convening authority's command. The same attachment, however, also reflects that the convening authority was made aware that (a) although the Circuit Military Judge makes available a general court-martial judge for detail by the convening authority, it is within the latter's authority actually to detail a judge for a trial; (b) if the convening authority feels justified, he may ask the Circuit Military Judge to make available to him another military judge; and, (c) he may appeal any unresolved conflict to the Chief Judge, Navy-Marine Corps Judiciary Activity in Washington, to the Judge Advocate General, or to the Secretary of the Navy. Because the convening authority was made aware of those options, it is significant that he personally signed the amending order substituting Judge Kaye for Judge Redding.

We recognize that some tension exists between our ruling in *United States v. Newcomb*, 5 M.J. 4 (C.M.A.1978), that detailing a military judge is a jurisdictional act which the convening authority may not delegate, and the practical reality that military judges are the resource of the Judge Advocate General rather than of the convening authority. Fortunately, any current dilemma in this regard is resolved by the Military Justice Act of 1983,[3] for, after August 1, 1984, appointing a presiding judge to a court-martial will be solely the responsibility of the judiciary, not of the convening authority.[4]

■ Here, though, we find no fault in the manner in which this situation was handled under the current statutory provisions. No convening authority has at his disposal the entire trial judiciary of his Service. Instead, it is largely the prerogative of the judiciary to determine what judge or judges are available to serve the needs of a command. Nonetheless, the convening authority is required to decide whether to detail the available judge or to seek assignment of another judge. The record does not indicate that anyone but the convening authority made the decision that Judge Kaye should serve, instead of adopting some other alternative. Thus, the demands of *Newcomb* were met.

### B.

As originally enacted in 1951, Article 29(a) of the Uniform Code of Military Justice, 10 U.S.C. § 829(a), provided:

No member of a general or special court-martial shall be absent or excused after *the accused has been arraigned except* for physical disability or as a result of a challenge or *by order of the convening authority for good cause.*

(Emphasis added.) Although the Code contained no express provision about replacement of a law officer, paragraph 39*e* of the Manual for Courts-Martial, United States, 1951, did state that "the law officer should not be changed *during the progress of a trial* except for a good reason." (Emphasis added.) There was no indication in the Manual, however, as to when trial actually began for this purpose.

Because the Code and the Manual did not expressly treat the substitution of law officers in the same manner as substitution of court members, it might have been reasoned that the replacement of a law officer without good cause was permitted to take place at a different time than that of a member. However, in *United States v. Boysen*, 11 U.S.C.M.A. 331, 29 C.M.R. 147 (1960), this Court equated the point in time when the law officer could be changed without justification to the point when a member could be excused. There, the

---

**3.** Art. 26(a), UCMJ, 10 U.S.C. § 826(a), as amended by the Military Justice Act of 1983, Pub.L. No. 98–209, § 3(c)(1), 97 Stat. 1393, 1394 (1983).

**4.** R.C.M. 503(b)(1), Manual for Courts-Martial, 1984.

Court set aside findings of guilt because a new law officer had been substituted after arraignment of the accused. Chief Judge Quinn, author of the majority opinion, explained:

> Appropriately, we may consider excuse of a law officer from the same standpoint as excuse of a court member. Under the Manual, each may be substituted for "good cause." Also, the relationship between the two is in effect suggested by Freeman v United States, supra, [227 Fed 732, 759 (CA2d Cir) (1915)], one of the cases most strongly relied upon by appellate defense counsel. The court there said that the judge and jury "must remain identical from the beginning to the end" of the trial. Statutory authorization to excuse the one tends to support the view that the excuse of the other, for identical reasons, might not violate the requirements of a fair trial.

11 U.S.C.M.A. at 335, 29 C.M.R. at 151.

When Article 39(a), UCMJ, 10 U.S.C. § 839(a), was added in 1969, giving new power and flexibility to the military judge (formerly the law officer), Congress anticipated that arraignments often would take place during pretrial hearings before the court members were present. Therefore, at this same time, Article 29(a) was amended to prescribe that a court-martial member not be "absent or excused *after the court has been assembled* for the trial of the accused except for physical disability or as a result of a challenge or by order of the convening authority for good cause." (Emphasis added.) Although the Code still dealt only with substitution of members and did not provide for replacing a military judge, paragraph 39e of the 1969 Manual (Revised edition) followed its 1951 predecessor by providing:

> The military judge may not be replaced *during the progress of a trial* except for physical disability, as a result of challenge or for other good cause.

(Emphasis added.) As to when trial began for this purpose, the Court in *United States v. Smith,* 3 M.J. 490 (C.M.A.1975), chose to employ the same approach it had

used 15 years before in *Boysen,* of equating the points in the trial after which neither the judge nor members could be changed without "good cause." It unanimously held:

> We accordingly hold that a military judge may be replaced prior to the assembly of a court by a convening authority without showing of good cause. *If the replacement occurs once the court has been assembled, however, good cause must still be demonstrated and made a matter of record. United States v. Boysen, supra.* Such an interpretation, we believe, gives the needed flexibility for the timely assignment of military judges to facilitate the administration of military justice in a highly effective and efficient manner and yet avoid any unlawful interruption or interference with the trial proper.

*Id.* at 492 (emphasis added; footnote omitted).

Thus, in view of *Smith,* the issue here becomes whether a court-martial with members is "assembled" when the *voir dire* of the members begins or, instead, when the process of selecting the members is completed. Although the Manual gives no precise answer, several of its provisions strongly indicate that the beginning—not the end—of the selection process is the crucial event.

"Assembly of the court" is the heading for paragraph 61j, which states:

> The court is assembled when, after the members have gathered in the courtroom to start the trial, the military judge or the president of a special court-martial without a military judge has announced that the court is assembled. In a court-martial consisting of a military judge alone, the court is assembled at the time announced by the military judge. See appendix 8b.

The reference to announcement that the court has assembled might suggest that a judge can delay the "assembly of the court" indefinitely simply by failing to announce that it is assembled. However, if this interpretation were stretched to the

extreme, the result would be that a court is never assembled if the judge fails to make this announcement.

The reference to the gathering of the members in the courtroom—and the absence of any reference to the ultimate selection of the members who will serve in the particular trial—tend to indicate that "assembly" precedes the selection process. Furthermore, since paragraph 61*j* precedes the discussion of challenges in paragraph 62, it may be assumed that the draftsmen of the Manual anticipated that "assembly" would take place before the challenges were considered. The guide to trial procedure contained in appendix 8b conforms to this interpretation in its reference to the point in the proceedings when assembly of the court is announced. *See* App. 8*b*, p. A8–11, Manual, *supra.*

Paragraph 62*d* of the Manual also supports this view, for it provides that generally "challenges should be made immediately *following assembly of the court.*" (Emphasis added.) Inasmuch as challenges are made before the selection of the court members is completed, this language— which places challenges *after* assembly of the court—indicates that assembly precedes commencement of the *voir dire* of court members.

Paragraph 39*b*(3) further supports our inference. It provides that "the military judge should set the time for assembly of the court after consultation with the *senior member.*" (Emphasis added.) The use of the term "senior member"—rather than "president"—implies that the final membership of the court-martial will not have been determined at the time when the court first "assembles". Presumably, the reason for this uncertainty is that "assembly of the court" comes before the challenges, so that it is quite possible that the "senior member" may be removed from the court by peremptory challenge or challenge for cause, in which event, the "senior member" will not become "president" of the court-martial.

References to "assembly of the court" appear elsewhere in the Manual, *see, e.g.,* paras. 53*d*(1), 53*d*(2), 65*a*, 67*b*, 69*a*. However, they shed no light on our question. Therefore, our conclusion must be that "assembly of the court" does not await completion of the process to challenge members of the court.

■ Accordingly, in line with *Boysen* and *Smith,* substitution here of a new military judge without good cause, after "assembly of the court" and over defense objection, requires that we set aside any action which the court-martial took thereafter.

Because the Uniform Code does not dictate that replacement of a judge be governed by the same criteria that apply to the substitution of court-martial members, the President is free to make Manual changes that, henceforth, would produce a different result. Furthermore, because, after August 1, 1984, judges, unlike court members, will no longer be appointed to courts-martial by convening authorities, some added reason may exist now for considering a Manual change in this regard to allow more flexibility to the judiciary in assignment of judges. *See generally* R.C.M. 505(e), Manual for Courts-Martial, 1984. However, under the Manual provisions applicable to this case, the substitution of Judge Kaye for Judge Redding, without "good cause" and over defense objection, occurred too late in the proceedings.

### III

The second issue was addressed by the Court of Military Review in this manner:[5]

The initial military judge posed many questions to the original panel, some of which were all-inclusive questions such as the following: "Do any of you harbor any thoughts or feelings regarding punishments which might affect your ability to award a completely fair, impartial and appropriate sentence in this case?" (R. 269). Defense counsel then commenced his *voir dire* and had asked only so many

---

5. *United States v. Dixon,* 8 M.J. 858, 861 (N.C.M. R.1980).

questions and received so many answers as occupy some two pages in the record when virtually all subsequent questions were objected to, and sustained by the judge. The prosecution referenced the all-inclusive questions the judge had posed, to which the members had all quite naturally expressed agreeable responses, and thereupon argued that the defense counsel was asking questions that had been "asked and answered." The objection "asked and answered" is a proper one to use when opposing counsel unnecessarily reiterates a point already established. This defense counsel, however, was properly posing *specific* questions to test the validity of the *general* disclaimer of bias to which the members had assented in monosyllables or nods. The quoted judicial inquiry asked if the members had any "feelings" which "might affect" them.

Humans are not reliable gauges of their own temperatures; counsel *voir dire* is a thermometer seeking an impartial reading. Efforts to test the members for bias by posing specific questions were, however, repeatedly foreclosed by the trial judge who perhaps over anticipated a fishing expedition by this counsel. Trial defense counsel addressed the military judge in this regard:

> [Y]ou asked the general questions about sentencing, however, I believe my questions are a little more specific and maybe a little more probing into any possibilities toward opinions that may be formed at this time concerning an appropriate sentence....
>
> MJ: Counsel, I feel that that matter has been adequately covered by my questions and the objection is sustained.

(R. 303). The defense counsel therefore was not allowed to ask a single member if he thought a punitive discharge would be a necessary element of any eventual sentence. (R. 303). Such truncated *voir dire* was error.

The examples noted are representative of a sharply curtailed *voir dire* and are not within the even handed procedures contemplated in *United States v. Slubowski*, 7 M.J. 461 (C.M.A.1979), announced subsequent to these proceedings. We would normally be inclined to find this aborted *voir dire*, appropriately objected to by the defense, as a violation of due process such as would require a rehearing on the sentence; any error, however, was waived on September 18 when the defense declined to reopen *voir dire* at Judge K's invitation. Accuseds, and their families who occasionally attend trials, should perceive indicia of fairness, not a stingy allotment of the minimum minutes required for a conclusion. The practice, therefore, of posing several generic questions by a judge and routinely denying, as "asked and answered", even single specific questions designed to test those general conclusions should be avoided.

Generally, we subscribe fully to the comments of the Court of Military Review. The only possible divergence would be whether, under the particular circumstances of this case, the announcement by Judge Kaye that the rulings of Judge Redding would be followed as the "law of the case" excused defense counsel's failure to accept the invitation for further *voir dire*. While we seldom will give relief to an appellant if his defense counsel at trial did not take advantage of a proffered means to correct an asserted error, we also have no wish to penalize a counsel who complies with a judge's ruling, instead of protracting proceedings needlessly. However, our disposition of the other issue in this case makes it unnecessary to pursue this question.

IV

The decision of the United States Navy Court of Military Review is reversed as to sentence and the sentence is set aside. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing as to sentence may be ordered.

Judge FLETCHER and Senior Judge COOK concur.