UNITED STATES, Appellee,

v.

**Russell HAWKINS, Seaman, U.S. Navy, Appellant.**

No. 50,917.
NMCM 84–1238.

U.S. Court of Military Appeals.

July 13, 1987.

For Appellant: *Captain Mark Foster, USMC* (argued); *Captain David C. Larson, JAGC, USN, Lieutenant Colonel Richard E. Ouellette, USMC, Lieutenant Richard F. McManus, JAGC, USNR* (on brief); *Lieutenant Louis F. Sadler, JAGC, USNR.*

For Appellee: *Lieutenant Thomas J. Seaton, JAGC, USNR* (argued); *Captain W.J. Hughes, JAGC, USN, Captain Wendell A. Kjos, JAGC, USN, Lieutenant J.K. Ianno, JAGC, USNR* (on brief).

*Opinion of the Court*

COX, Judge:

Appellant was convicted, contrary to his pleas, of one specification of larceny of $5,000.00, in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921.[1] We granted review of issues involving the propriety of substituting military judges and the correctness of the staff judge advocate's review. Finding no error to the substantial prejudice of appellant, we affirm. *See* Art. 59(a), UCMJ, 10 U.S.C. § 859(a).

I

WHETHER ERROR PREJUDICIAL TO APPELLANT'S SUBSTANTIAL RIGHTS OCCURRED WHEN, AFTER ARRAIGNMENT, FORUM SELECTION

---

1. He was sentenced to a bad-conduct discharge, confinement for 4 months, forfeiture of $300.00 pay per month for 4 months, and reduction to the pay grade of E-1. The convening and supervisory authorities approved the sentence, and the Court of Military Review affirmed.

(MILITARY JUDGE ALONE), AND ASSEMBLY OF THE COURT, A SUBSTITUTION OF MILITARY JUDGE OCCURRED WITHOUT A SHOWING OF GOOD CAUSE.

Appellant was initially arraigned on October 31, 1983, at a court-martial presided over by Lieutenant Commander P. Michael Stimson, JAGC, USN, the military judge. On that date, appellant submitted a written request for trial by judge alone. After duly inquiring into appellant's understanding of the request and the rights being waived, Judge Stimson approved the request. Thereupon, the Article 39(a), UCMJ, 10 U.S.C. § 839(a), session was terminated, and the judge announced that the court-martial was "assembled." After arraignment, but before entering his pleas, appellant moved for a continuance in order to permit further discovery; the motion was granted.

By the next session of the court-martial on November 21, 1983, Commander Newell D. Krogmann, JAGC, USN, had been detailed military judge, *vice* Lieutenant Commander Stimson. No explanation was given in the record for the substitution. The defense did not object to the replacement and declined to *voir dire* the new judge; further, appellant executed a written request to be tried by Judge Krogmann alone. Upon proper inquiry into appellant's understanding of the significance of the request, Judge Krogmann granted the request. Thereafter, the case proceeded to rearraignment and trial. Appellant now contends that his court-martial was improperly constituted as a result of the substitution of judges. We disagree.

Article 29(d), UCMJ, 10 U.S.C. § 829(d), establishes procedures for the recommencement of a judge-alone court-martial after a judge has been replaced. In its entirety, Article 29(d) provides:

If the military judge of a court-martial composed of a military judge only is unable to proceed with the trial because of

physical disability, as a result of a challenge, or for other good cause, the trial shall proceed, subject to any applicable conditions of section 816(1)(B) or (2)(C) of this title (article 16(1)(B) or (2)(C),[2] after the detail of a new military judge *as if no evidence had previously been introduced, unless a verbatim record of the evidence previously introduced or a stipulation thereof is read* in court in the presence of the new military judge, the accused, and counsel for both sides.

(Emphasis added.) By its terms, the article is directed toward a point in the trial when evidence has been introduced.

Paragraph 39e, Manual for Courts-Martial, United States, 1969 (Revised edition), in effect at the time of appellant's trial, offers that "physical disability," "challenge," and "good cause" are the exclusive bases for the replacement of judges, *"during the progress of a trial,"* and that "[t]he record of trial should show the facts which constitute good cause" (emphasis added). Unfortunately, no explanation is given for the ambiguous phrase, "during the progress of a trial." Unlike Article 29(d), paragraph 39e is not limited to trials by judge alone.

In *United States v. Smith*, 3 M.J. 490, 491–92 (C.M.A. 1975), we concluded that, in a trial with court members, "[t]here is no logical or legal necessity for the same judge both to rule on each and every pretrial matter and to sit as military judge at trial." Our rationale was that "[t]he function of the Article 39(a) session is to separate the trial itself from other preliminary and collateral matters which do not go directly to the issue of the guilt or innocence of an accused." *Id.* at 491; *cf.* Art. 29(d). Therefore, the critical point for substitution—after which showing of good cause is required—is "assembly of a court." *Id.* at 492. In *United States v. Dixon*, 18 M.J. 310, 313–14 (C.M.A. 1984), also a trial with members, we held that assembly is not dependent upon the actual announcement

---

2. Art. 16(1)(B) and (2)(C), Uniform Code of Military Justice, 10 U.S.C. § 816(1)(B) and (2)(C), relate to the establishment of judge-alone general and special courts-martial upon an accused's request and the judge's approval.

by the military judge, but occurs "when the *voir dire* of the members begins."

As to the point of assembly for judge-alone trials, paragraph 61*j*, Manual, *supra,* merely instructs that assembly occurs "at the time announced by the military judge." Apparently, this was ordinarily intended to occur immediately after the request for judge alone is accepted. App. 8, p.8–10, Manual, *supra.* Logically, by analogy to cases with members, it would appear that the critical point after which judges may not be substituted without a showing of good cause *et al.* is when all "preliminary and collateral matters" have been resolved and before trial on the merits has commenced. *See United States v. Smith, supra.* Thus in the instant case, since no evidence on the merits had been received at the time of substitution, there would appear to be no obstacle to substituting the judge without a showing of good cause, even though assembly had been technically announced.

█ We do not, however, need to reach this conclusion, for not only did appellant not object to the substitution in a timely manner (unlike the accused in *United States v. Dixon, supra* ), but he specifically requested trial by the new judge. By this affirmative act, in our view, appellant irrevocably waived all conceivable objections to the substitution.

█ To be sure, appellant argues that the substitution amounted to a "jurisdictional" defect, the likes of which can never be waived. *Cf.* paras. 68*b* and 215*a*, Manual, *supra.* The chief attributes of this label seem to be that the defense is relieved of the burden of objecting to perceived error at a time when such error could readily be cured, and it is excused from ever having to articulate plausible prejudice. We discern no basis for conferring jurisdictional significance on such nonmomentous events.[3] *Cf. United States v.*

**3.** Note that under present law, the military judge is no longer detailed by the convening authority. Art. 26(a), UCMJ, 10 U.S.C. § 826(a); R.C.M. 503(b)(1), Manual for Courts-Martial, United States, 1984.

*Ridley,* 22 M.J. 43, 48 (C.M.A. 1986). Accordingly, we hold that the issue is without merit.

## II

WHETHER THE STAFF JUDGE ADVOCATE ERRED TO THE PREJUDICE OF APPELLANT'S SUBSTANTIAL RIGHTS BY ADVISING THE SUPERVISORY AUTHORITY THAT HE COULD NOT CONSIDER A MATTER RAISED IN THE *GOODE*[4] RESPONSE THAT SUPPORTED THE DEFENSE ARGUMENT THAT THE FINDINGS OF GUILTY SHOULD HAVE BEEN DISAPPROVED BY THE AUTHORITY.

In his post-trial review, the staff judge advocate summarized the trial testimony of Torpedoman's Mate Seaman Frederick Wallace, appellant's alleged accomplice in the larceny. The summary included: Wallace's account of the scheme that he and appellant concocted to defraud banks; the fact that Wallace testified against appellant under a grant of immunity; and a miscellany of Wallace's other criminal and penal misfortunes.

In her formal rebuttal to the review, the detailed defense counsel criticized the adequacy of the staff judge advocate's portrayal of Wallace's legal difficulties, and she branded Wallace's trial testimony a fabrication. In particular, after positing that Wallace had been awarded a bad-conduct discharge at his own court-martial, she asserted that, *"[a]s a result of his testimony* against SN HAWKINS, he was told it would be recommended for the discharge to be suspended" (emphasis added).

In response to defense counsel's rebuttal, the staff judge advocate advised the supervisory authority:

These assertions [that Wallace had been awarded a BCD and promised a suspen-

**4.** *United States v. Goode,* 1 M.J. 3 (C.M.A. 1975).

sion for testimony against appellant] are *not* based on evidence presented at trial. Accordingly, it is my opinion that they do not belong in the review or the *Goode* [*supra* n.4] response, and cannot be considered in taking your action.

■ The granted issue addresses the prejudice to appellant of the staff judge advocate's advice that certain matters (or perhaps all matters) not contained in the record are inappropriate subjects for supervisory review. We certainly agree with appellant that this advice was incorrect. *United States v. Mann*, 22 M.J. 279 (C.M.A. 1986). The existence of prejudice, however, is another matter.

■ Appellate defense counsel initially proceeded, quite reasonably, on the assumption that trial defense counsel's assertion implied a *quid pro quo* for Wallace's testimony—some incentive for him to give damaging testimony against appellant. If established,[5] such linkage could, of course,

have affected Wallace's credibility. To their considerable credit, however, appellate defense counsel have subsequently uncovered and brought to our attention during oral argument (thus correcting whatever misimpression may have been inadvertently conveyed) the fact that Wallace's punitive discharge was actually suspended some six weeks *prior* to his testimony against appellant. Thus, Wallace's testimony was obviously not based on a hope of securing future suspension of his discharge. The claim of prejudice, then, is nullified since the erroneous advice was to disregard an assertion not supported by fact.

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Chief Judge EVERETT and Judge SULLIVAN concur.

---

**5.** It was not, either by affidavit or any other credible evidence, probably for the reason hereinafter indicated.