UNITED STATES, Appellee

v

BILLY C. MATTHEWS, Private, U. S. Marine Corps, Appellant

17 USCMA 632, 38 CMR 430

No. 20,997

June 28, 1968

*Lieutenant David E. Miller,* USNR, argued the cause for Appellant, Accused.

*Lieutenant William A. Carnahan,* USNR, argued the cause for Appellee, United States. With him on the brief was *Colonel C. R. Larouche,* USMC.

### Opinion of the Court

KILDAY, Judge:

The appellant was arraigned before a general court-martial convened at Cherry Point, North Carolina, charged with sodomy (three specifications) and absence without leave, terminated by apprehension, in violation of Articles 125 and 86, Uniform Code of Military Justice, 10 USC §§ 925 and 886, respectively. He pleaded not guilty to sodomy but guilty to absence without leave. He was found guilty of two

specifications of sodomy and absence without leave and sentenced to dishonorable discharge, forfeiture of $56.90 per month for thirty-six months, and confinement at hard labor for a like period. Intermediate appellate authorities affirmed the findings and sentence. We granted review to consider whether:

(1) The board of review erroneously denied the appellant's petition for a new trial; and

(2) The appellant was prejudiced by the convening authority's dismissal of a court member subsequent to arraignment.

Following his conviction, and while his case was before the board of review, the appellant petitioned that body for a new trial based upon newly discovered evidence. According to his petition, three witnesses would testify that the charged acts of sodomy never took place and five witnesses would testify that the sole eyewitness made statements out of the courtroom to the effect that the acts of sodomy to which he testified at the trial of the appellant never in fact occurred. When the Government replied to this petition, the appellant's counsel in rebuttal also alleged that a fraud was perpetrated upon the court by the perjury of the sole eyewitness. On the grounds that the defense did not exercise due diligence in uncovering the "newly discovered" evidence and since there was no evidence of confessed or proved perjury of the testimony at trial (only a prior inconsistent statement), the board of review denied the petition for a new trial.

The offenses of sodomy were alleged to have taken place in the Station Brig at Cherry Point, with Private First Class R, Private First Class W, and Private M, all Marine Corps personnel. Appellant was acquitted of the alleged acts with Private M. Private First Class R testified but denied he performed sodomy or saw any acts of sodomy. Private First Class W testi-

fied that he observed the appellant perform the alleged acts of sodomy, including the one performed on himself; and the appellant's pretrial statement was received in evidence. Therein he stated he had committed acts of sodomy since he was twenty years of age and admitted the acts charged in the specifications of which he was convicted. No evidence was introduced by the defense prior to findings. In mitigation, the appellant testified under oath and stated that he was sorry for what he had done. His counsel asked the court to be lenient on the ground that "[w]e have something here that apparently existed before the accused was drafted."

Less than three months after appellant's conviction, trial defense counsel, at the request of the appellant, forwarded a petition for a new trial and identified the individuals who, allegedly, could clear the appellant of charges of sodomy. In an affidavit, made a part of the record, counsel explains their unavailability at time of trial— some were themselves awaiting trial for the same offense and on advice of counsel would not discuss the case, while the others became witnesses only after the trial when they, allegedly, heard Private First Class W state that the offenses to which he testified did not take place. Included in this affidavit is the following disclosure:

". . . At the time of trial in this case the defense knew that Private MATTOT and PFC BENNETT could testify that no acts of oral sodomy had taken place between Private MATTHEWS and any other person, and that the statements which were executed saying otherwise during the preliminary investigation by MATTHEWS and the other persons involved, including themselves, were done falsely so that the participants might effect separation from the Marine Corps on grounds of homosexuality."[1]

---

[1] Private Mattot and Private First Class Bennett were convicted between the time of appellant's trial and his petition for a new trial, for false representation that they were homosexuals and false statements under oath that they had performed and observed others perform homosexual acts.

In perfecting the petition for a new trial, appellate defense counsel secured an additional affidavit from trial defense counsel which was filed before the board of review. Therein trial defense counsel again revealed that he was aware, prior to trial, of appellant's innocence and the above-stated reason for his confession, and those of the others involved, to acts of sodomy. He asserted that he thoroughly discussed the matter with the appellant and they both agreed that as a defense tactic, in the hope of leniency, "it would be in the accused's best interest not to contest the government's case on the merits, even though it was known to Defense Counsel that the accused was protesting his innocence." "We felt that as a matter of principle the court would disbelieve everything that MATTHEWS said controverting his written, sworn statement, and it would further award him a substantially heavier sentence for taking the stand and 'lying.' If they did believe MATTHEWS on the stand, we felt that they would disregard his testimony anyway and, as a matter of principle, hold him to the sworn statement which he previously executed, and then award him a substantially heavier sentence for lying in the first place."

The appellant cannot have it both ways. Initially, he contends that he and others concocted a ▮▮▮▮▮▮ scheme for the sole purpose of being discharged from the Marine Corps. Faced with charges based on his pretrial statement, he made a reasoned choice not to contest the prosecution's case by telling the "truth." Following conviction and a perhaps heavier than expected sentence, he asks appellate authorities to bail him out of his predicament by accepting as true a contention he could have made at trial. As one board member stated in a separate concurring opinion, "The accused does not come before us with clean hands. . . . I concur wholeheartedly in leaving all concerned precisely where their own mendacity has placed them."

We agree with the board's denial of appellant's petition for a new trial. If any fraud was perpetrated upon the court, it was by the appellant.

The second issue, as noted above, concerns the dismissal of a court member by the convening authority. At the outset of the trial and subsequent to the appellant's plea, the prosecution presented and began questioning its first witness, Private First Class R. Because the witness testified contrary to a pretrial statement which he had made, the prosecution requested and was granted a five-day continuance. Upon so notifying the court members, the law officer was informed by the president that one of the members, Major Christy, would not then be available. The law officer then remarked, "Well, the general essence of the rule is that after arraignment a member may be absent only as a result of physical disability or order of the convening authority for good cause. If the convening authority has good cause, that is a matter for his decision." Court was adjourned without further comment.

When the court reconvened the following colloquy took place:

"TC: All parties who were present when the court recessed are again present with the exception of Major Robert A. CHRISTY, who has been excused by the Convening Authority.

"LO: Do you have the reason for the excuse? As I indicated previously, other than sickness or physical disability, it must be for a good cause after the arraignment.

"TC: Sir, as I know it, the reason that Major CHRISTY has been excused [sic] from this court is the fact the command to which he is attached previously was part of Marine Corps Air Station, but subsequently has been made a command of itself. This is O & R which is now NARF, I think. I'm not sure.

"LO: Now how about explaining to me what all of those initals stand for.

"TC: The O & R stands for Overhaul and Repair. I'm not sure about the other ones.

"PRES: May I help, Mr. Law

**634**

Officer. When the court was appointed by General CARL, the Overhaul and Repair facility was a subordinate unit through the Marine Corps Air Station here at Cherry Point. Since the appointing order was put out, the O & R facility has now been made a separate command and works directly for the Navy Department. Major CHRISTY is a member of that command and he has a set of Temporary Additional Duty Orders. He took this information into General CARL and it was his decision that he be excused for[sic] the court for that reason.

"LO: Then Major CHRISTY is no longer under the command of General CARL?

"PRES: That is correct.

"LO: Does the Defense have any comments?

"DC: I have no comments.

"LO: Proceed.

"TC: Sir, the Prosecution will call PFC T. L. WALKER."

Article 29(a) of the Code, supra, provides:

"No member of a general or special court-martial may be absent or excused after the accused has been arraigned except for physical disability or as a result of a challenge or *by order of the convening authority for good cause.*" [Emphasis supplied.]

Paragraph 37*b*, Manual for Courts-Martial, United States, 1951, restates this article of the Code and adds, "Military exigencies or emergency leave, among others, may constitute good cause for such a relief."

In United States v Grow, 3 USCMA 77, 11 CMR 77, we construed the provision of Article 29(a) to permit relief of a member by the convening authority only under limited circumstances, *i.e.,* on the ground of military necessity or exigency, when the officer appointing the court determines, after balancing the interests involved, that the member's services are elsewhere urgently required. We adhered to that position in United States v Boysen, 11 USCMA 331, 29 CMR 147, where we refused to equate an ordinary transfer to good cause under the statute. In each of the cited cases, as well as in United States v Greenwell, 12 USCMA 560, 31 CMR 146, and United States v Metcalf, 16 USCMA 153, 36 CMR 309, we repeated our injunction that the record of trial is required *affirmatively* to show the reasons for relief of a court member by the convening authority.

Appellate defense counsel asserts that the record in this regard is deficient for while the president related that Major Christy's unit had been placed under another command, thus leading the law officer to conjecture that "Major CHRISTY is no longer under the command of General CARL?" (the convening authority), in point of fact this was merely a paper transfer which did not change the Major's physical location—a fact not learned by defense counsel until after trial. In this he was substantiated by an affidavit from the excused member, secured by appellate Government counsel and presented as a part of its brief before the board of review. Therein Major Christy verified the statement of the court president concerning the transfer of his unit and its physical retention at Cherry Point and further related, "Since he was no longer a member of the MCAS, Cherry Point, North Carolina command, he requested to be excused from the court. The excusal by the convening authority was conveyed to him by the Chief of Staff, Marine Corps Air Station, Cherry Point, North Carolina."

The board of review decided that, based on the information supplied to him concerning Major Christy's absence, the law officer did not err in ordering the trial to proceed. It held, however, that since the member's excusal was not "premised on military necessity of a critical or unusual nature," good cause had not been demonstrated and the convening authority acted erroneously. Since the error is not jurisdictional (United States v Metcalf, supra), the board affirmed on the ground that the defense had effectively waived any prejudice by failing

to object to the removal of Major Christy. In this regard the board of review charged the defense, having been alerted to his potential absence, with the responsibility of determining, during the continuance, whether there was a valid basis for the prospective excusing of Major Christy — the very information he secured *after* the trial was completed.

We agree with the board in its holding of error and waiver in this case. When the issue was before █ the law officer he asked for the comments of defense counsel and received none. For aught the law officer knew good cause existed, although it now appears to the contrary. Counsel's failure to object at that time only served to confirm this view. Cf. United States v Grow, supra.

This, however, does not satisfy our repeated injunction that "Records of trial should set forth in detail the basis of the absence or relief of any member and *affirmatively establish that such absence or relief falls within the provisions of the Code*." (Emphasis supplied). United States v Grow, supra, at page 83; United States v Boysen, United States v Greenwell, and United States v Metcalf, all supra. We note, parenthetically, that the record always contains the signed order of the convening authority appointing the court as well as any changes made in the membership thereof. We see no reason why a similar document could not be supplied in connection with matters such as this, detailing the basis for the action. Only in this manner will the appropriate officers of the court be in a position to properly discharge their responsibilities. This procedure, implicit in the above-quoted provision in *Grow*, was again suggested in each of the cited cases. We are at a loss to understand the military's failure to grasp its significance. Failure to comply in future cases invites reversal.

The decision of the board of review is affirmed.

Judge FERGUSON concurs.

Chief Judge QUINN concurs in the result.