UNITED STATES

v.

**Staff Sergeant Victor M. MALCZEWSKYJ, FR 138–56–3837, United States Air Force.**

**ACM 26253.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 5 May 1987.

Decided 17 Aug. 1988.

Appellate Counsel for the Appellant: Colonel Leo L. Sergi and Captain Laurence M. Soybel.

Appellate Counsel for the U.S. Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni, Lieutenant Colonel Morris A. Tanner, Jr., and Captain Jeffrey H. Curtis.

Before HODGSON, HOLTE, FORAY, MICHALSKI, LEWIS, BLOMMERS and MURDOCK, Appellate Military Judges, en banc.

## DECISION

BLOMMERS, Judge:

The appellant's court-martial was convened by a special order detailing nine members thereto.[1] A subsequent amending order relieved five of these members and detailed four new members, leaving eight members on the panel. *See generally* R.C.M. 505. From the record, it appears that the "wrong panel" (we presume this to be the members detailed by the original convening order) was notified of the trial date. On the morning the court was ready to assemble with the members, efforts were made to contact the "right panel" members, but only three were available. A general court-martial, of course, cannot proceed with less than five members. Arti-

cles 16(1)(a) and 29(b), UCMJ. After noting this fact for the record, the military judge inquired: "And the convening authority is presently attempting to take care of amending the convening orders to provide a sufficient number of members to have a quorum. Is that correct, Government?" To which the assistant trial counsel replied: "Yes, your honor, that's correct."[2] The court then recessed for about an hour. When it reconvened, six members, all detailed by either the original or amending order, were present. There were no further amendments to the convening orders. These six members were accounted for on the record (R.C.M. 901(b)), and the trial proceeded to its conclusion. But the record is absolutely silent as to what happened to the two remaining detailed members, one by the original convening order, the other by the amending order.

Defense counsel first raised the matter of the two missing members in his post-trial submission to the convening authority. R.C.M. 1105 and 1106. In an addendum to his Recommendation, the staff judge advocate stated in reply thereto:

The basis of the allegation is that two of the detailed court members were absent without being properly excused. The defense counsel is correct in his allegation of the unexcused absence of two court members. However, I disagree that this error in any way prejudiced the accused.

The convening authority then approved the findings and sentence.[3] Before this Court, the appellant asserted the absence of the two members was error based upon due process grounds. Considering the state of the record, we then specified the following issue:

UNDER THE 1984 MANUAL (R.C.M. 805(b)), IS THE PRESENCE OF ALL

---

**1.** Electing trial with members, the appellant was ultimately found guilty, based upon urinalysis testing, of using cocaine, and his sentence, as adjudged and approved by the convening authority, extends to a bad conduct discharge, forfeiture of $300.00 pay per month for two months, and reduction to airman basic.

**2.** The military judge also indicated he would allow the defense to make a different selection as to the forum if they desired after being appraised of who the panel members would be.

He told trial counsel to furnish the "credit" information to the defense so that they could make a well-informed decision. *United States v. Credit*, 2 M.J. 631 (A.F.C.M.R.1976).

**3.** This concession by the staff judge advocate removes any possibility that the absence of the two members could be explained under the provisions of R.C.M. 505(b), together with applying a presumption of regularity to the proceedings.

DETAILED MEMBERS, UNLESS PROPERLY EXCUSED, NOW, IN ESSENCE, A JURISDICTIONAL REQUIREMENT THAT CHANGES FORMER CASE LAW?

In order to answer this question, a brief review of pertinent statutory and manual provisions as well as case law in effect before passage of the Military Justice Act of 1983 and adoption of the Rules for Courts–Martial as contained in the 1984 Manual for Courts–Martial is appropriate.[4]

Since its original passage in 1950,[5] the Uniform Code has provided that a general court-martial panel must consist of not less than five members. Article 16, UCMJ. The Code also provides that "[n]o member of a general or special court-martial may be absent or excused *after the court has been assembled* ... unless excused as a result of challenge, ... for physical disability or other good cause...." (Emphasis added.) Article 29(a), UCMJ. "Whenever a general court-martial, ... is reduced below five members, the trial may not proceed unless the convening authority details new members sufficient in number to provide not less than five members." Article 29(b), UCMJ. These latter two provisions have also remained, for the purposes of the issue we are facing, substantially unchanged since the Code's inception. *See also* MCM, 1969 (Rev.), paras. 4, 37 and 41; MCM, 1951, paras. 4b, 37 and 41. The 1969 Manual, in addition to enumerating the above set forth requirements, and stating that no member may be absent during the trial of a case except for physical disability, as the result of challenge, or by order of the convening authority, provided:

The unauthorized absence of a member of a general or special court-martial from a session of the court may be a military offense, but his absence before the assembly of the court for the trial of the accused will not prevent the court from proceeding with the trial if a quorum is present. Trial counsel will report any unauthorized absence of a member to the convening authority.

MCM, 1969 (Rev.), para. 41(d)(3). *See also* MCM, 1951, para. 41(d)(3).

Interpreting these codal and manual provisions, the Court of Military Appeals has held that the unexcused absence of members is not a jurisdictional defect as long as the court is not reduced below the required quorum. *United States v. Colon,* 6 M.J. 73 (C.M.A.1978), citing Articles 16 and 29(b) and (c), UCMJ. *See also United States v. Allen,* 5 U.S.C.M.A. 626, 18 C.M.R. 250 (1955). Rather, the fact that there are one or more members missing raises a question as to whether or not the accused was denied military due process. Is this still the law?

Rule for Courts–Martial 805(b) provides in pertinent part:

Unless trial is by military judge alone pursuant to a request by the accused, no court-martial proceeding may take place in the absence of any detailed member except: Article 39(a) session under R.C.M. 803; examination of members under R.C.M. 912(d) [*voir dire*]; when the member has been excused under R.C.M. 505 [by convening authority or military judge] or 912(f) [challenges]; or as otherwise provided in R.C.M. 1102 [post-trial sessions]. . . .

None of the exceptions are applicable to the situation we face. As our dissenting brothers point out, the language in the Rule appears straight-forward and clear. With this we cannot disagree. Further, a principal of "statutory" or administrative construction is to give effect to the plain meaning of the language under consideration. *United States v. Blair,* 10 U.S.C.M.A. 161, 27 C.M.R. 235 (1959); *United States v. Burton,* 42 C.M.R. 970 (A.F.C.M.

---

**4.** We express our disappointment that we are even having to address this issue, and that appellate counsel had to take the time to research and brief it. This Court has in the recent past, on more than one occasion, stressed the importance of accounting for all detailed panel members on the record. *See United States v. Wheat-* *craft,* 23 M.J. 687, 689 (A.F.C.M.R.1986), *pet. denied* 24 M.J. 54 (C.M.A.1987); R.C.M. 505(b), 805(b) and 901(b).

**5.** Public Law 506, 81st Congress, c. 169, Sec. 1, 64 Stat. 108; Title 50, U.S.C. (Chap. 22), Secs. 551–736.

R.1970). However, we must also be cognizant of the Manual's overall purpose, and view its terms in light of the regulatory context in which they are found. *United States v. Ortiz*, 24 M.J. 164 (C.M.A.1987); *United States v. Johnston*, 24 M.J. 271 (C.M.A.1987).

We note that the drafters provided no Discussion section under R.C.M. 805(b). However, this Rule is referenced in Appendix 21, the Analysis to the Manual.[6] It states: "This subsection is based on paragraph 41c and 41d(1) and (2) and the first sentence of the second paragraph 62b of MCM, 1969 (Rev.) and on Article 29(c). *See also United States v. Colon*, 6 M.J. 73 (C.M.A.1978)." MCM, Appendix 21, at A21–41 (1984). Conspicuously absent is any reference to paragraph 41 d(3) of the 1969 Manual, which, as noted above, specifically dealt with the unauthorized absence of a member. On the other hand, the *Colon* case is cited. Thus, no clear guidance is provided as to the drafters' intent. Absent such guidance, we are not inclined to hold that Rule 805(b) has been elevated to a rule of jurisdiction rather than procedure, particularly in light of the fact that viewing this matter as jurisdictional would constitute a substantial change to the present law. *See* Footnote 6 above. *See also United States v. Colon, supra; United States v. Allen, supra.* Moreover, the Court of Military Appeals has recently held that "we are not justified in attaching jurisdictional significance to service regulations in the absence of their express characterization as such by Congress." *United States v. Jette*, 25 M.J. 16, 18 (C.M.A.1987). *Cf. United States v. Mance*, 26 M.J. 244, 252 (C.M.A.1988); *Ellis v. Jacob*, 26 M.J. 90, 92–93 (C.M.A.1988); Article 36, UCMJ. We believe the same rationale can be applied to the Manual rule at issue in this case.[7] As pointed out earlier, the statutory basis regarding the appointment and presence of members has not changed. In light of our conclusion, we find that the holding in *Colon* is controlling.

There is no question but that the failure to follow the requirements of R.C. M. 805(b) constituted error. We must now test for prejudice. *United States v. Colon, supra*, at 75. We find none. The test for prejudice as originally set forth in *Allen* and subsequently indorsed by Chief Judge Fletcher in *Colon*, was based upon "a substantial reduction in the membership of the Court so as not to represent the kind of court contemplated by the convening authority in his original detail." *Id.* We do not find that to be the case here. Six of the eight detailed members were present, and the grade distribution of the members was not substantially affected. The members present included a colonel, two lieutenant colonels, a major and two captains. Missing were a colonel and a major. Moreover, here, unlike the case in *Colon*, it appears there was at least some communication with the convening authority once a problem with the availability of the members was determined to exist. We find it highly unlikely that the presence of the other two members would have altered the outcome. Although this was a hotly contested case, there was clearly sufficient evidence upon which the members could conclude that the appellant was guilty beyond a reasonable doubt. We are similarly convinced. Considering his time in service and his status as a noncommissioned officer, the appellant received a fairly lenient sentence. His military due process rights were not infringed upon.

Finally, although we have addressed the substantive issue, since the defense at no time during the trial challenged the court's proceeding absent two detailed members, we believe the appellant waived any right "to be tried by a court composed of members appointed by the convening

---

6. "The Analysis sets forth the nonbinding views of the drafters as to the basis for each rule or paragraph, as well as the intent of the drafters, *particularly with respect to the purpose of substantial changes in present law.* The Analysis is intended to be a guide in interpretation." MCM, Appendix 21, at A21–3 (1984).

7. We also note that Rule 805(b) is contained in Chapter VIII of the Manual, entitled "Trial Procedure Generally." To our knowledge no rule within Chapter VIII has been viewed as jurisdictional in nature.

authority not lawfully absent or excused." *United States v. Allen, supra* at 265 (Chief Judge Quinn, concurring). *See also United States v. Colon, supra* at 76 (Judge Cook, dissenting); R.C.M. 905(e) and 912(b)(3).

We find the other two asserted errors to be without merit. We conclude that the findings and sentence are correct in law and fact and that no error prejudicial to the substantial rights of the accused was committed. Accordingly, the findings of guilty and sentence are

AFFIRMED.

Chief Judge HODGSON, Senior Judge FORAY and Judge HOLTE concur.

Senior Judge LEWIS, with whom Judge MICHALSKI joins (dissenting):

This is a "hard case." It is not hard in the sense of involving arcane, difficult legal principles. It is hard, rather, in the sense of being a case that ought not be reversed on an issue which many would perceive as a mere legal technicality, an issue having absolutely nothing whatsoever to do with the appellant's guilt. Today it has met the fate of certain other hard cases spoken of in judicial history and legend.

The relevant portion of R.C.M. 805(b) states in relatively stark simplicity: "Unless trial is by military judge alone pursuant to a request by the accused, *no court-martial proceeding may take place* in the absence of any detailed member...." (Emphasis added). The Rule proceeds to list several exceptions, none of which is applicable in this case. How is a court-martial authorized to proceed when two of its detailed members are absent and unaccounted for (to this very date, for that matter)? R.C.M. 805(b) tells us that it is not. This is the point at which the discussion should cease, the bottom line. While we obviously agree with much that is said in the majority analysis, we cannot concur with the conclusion that a different result may be reached.

We possess no better insight into what the Manual drafters had in mind than the majority. We cannot presume to say that they intended to draft a jurisdictional rule. We do note, however, that drafters' words have on past occasion been taken at face value by this Court. *See e.g., United States v. Saulter,* 23 M.J. 626 (A.F.C.M.R. 1986). Therefore, drafters run the risk that their words will be construed to mean what they say. This is particularly true in the present situation where, as the majority points out, the drafters have provided us with a provision substantially different in its treatment of missing members from that found in the 1969 Manual. Because of this, *United States v. Colon,* cited by the majority, provides no clear guidance. That opinion was issued when the former Manual provision was in effect. The Court's conclusion that missing court members created no jurisdictional impediment was little more than a self-evident truth at the time it was written. 6 M.J. at 74, note 2. However, we do not mean to minimize the importance of *Colon.* We shall return to it before we have completed our discussion, as it continues to provide certain lessons which may be instructive.

May court-martial jurisdiction be limited only by Congressional enactment and not by some lesser source of legal authority? While the majority opinion does not say so, this is the drift of a portion of its analysis. Any reliance the majority places on *United States v. Jette, supra,* in this regard is questionable. In *Jette,* the Court of Military Appeals reviewed this Court's construction of a departmental directive concerning devolution of command, an issue at least once removed from the question of who may act as a convening authority. There are provisions in departmental directives which impact more directly on the trial process than rules for appointment to and assumption of command. Some provisions effectively limit court-martial jurisdiction. In an appropriate case we would not hesitate to accord them full force and effect. In *United States v. Olsen,* 24 M.J. 669 (A.F.C.M.R.1987), we set aside the findings of guilty and sentence when the accused was tried for substantially the same

offense for which he had previously been prosecuted off base. We found that the court-martial had been conducted without prior Secretarial approval contrary to Air Force Regulation 111–1, *Military Justice Guide*, para. 2–4 (Aug 1984). To cite another familiar example, in the Air Force a member may not be subjected to trial by summary court-martial unless he or she has first been offered nonjudicial punishment for substantially the same misconduct. AFR 111–1, para. 2–6. Congress did not impose this restriction. The Secretary of the Air Force did.

One clear conclusion follows from the foregoing discussion. Departmental directives may impose limitations on court-martial jurisdiction that are not otherwise provided for by specific language in the Articles of the UCMJ. It would be ludicrous to suggest that the Manual itself might not impose similar restrictions. We understand that the Manual drafters might not undertake to expand court-martial jurisdiction absent a Congressional warrant. However, we find nothing in the Code to suggest that the drafters were precluded from providing that a court-martial may not proceed in the unexplained absence of detailed members. If the drafters were required to await a favorable signal from Capitol Hill before so providing, their task was even more difficult than we had imagined.

There is a short legislative history of sorts on R.C.M. 805(b) in the Analysis, as was noted in the majority opinion. We would be remiss if we did not mention it, as it provides the only indication whatsoever which we have been able to find suggesting that the Rule might mean less than what it says. The Analysis cites *United States v. Colon*. Does this citation tell us that the Rule is not intended to have a jurisdictional effect? No, it does not, in our view. The primary thrust of *Colon* is not its statement of the nonjurisdiction effect of missing members but in the holding that a significant change in court membership may deprive the accused of a substantial right guaranteed as a matter of military due process. 6 M.J. at 74–75. This remains the law. The citation to *Colon* in

the Analysis serves as a reminder that a due process issue may arise when a significant number of members are absent and the court-martial's composition is substantially changed thereby. The due process implication of absent members might conceivably arise even when the members have been properly excused and accounted for in accordance with exceptions cited by cross-reference in R.C.M. 805(b), e.g., good cause excusals by the military judge after assembly. R.C.M. 505(c)(2)(A)(ii).

*Colon* has one more lesson for us which may be more directly applicable to the case at hand. This is with respect to the application of waiver. The majority, having determined that R.C.M. 805(b) creates no jurisdictional roadblock, are at liberty to deal with this issue. Let us assume that we were considering a defect which might be waived at trial. Is this an appropriate case in which to apply waiver? The record demonstrates that the military judge was somewhat impatient and most eager to have the correct members located and assembled. He addressed the parties, as follows:

It's 9:45, gentlemen. Let's try to reconvene at 10:45. And the reason I put us on the record for this to set out where the members are is this is about the third time, at least the second in this case, that we've had members changing. And I'm trying to establish that the circuit and the judiciary are here at an appropriate time ready to start the case, however, the members are not available?

We can certainly empathize with the military judge in this exasperating situation. However, might we not consider what effect his mood and, possibly, his demeanor had on what occurred, or did not occur, subsequently? When the court reconvened were the members of the defense team, if they noted that all detailed panel members were not present, eager to advise him on the record that he was about to travel in harm's way if he proceeded without at least making an inquiry? If they perceived that a potential jurisdictional issue was developing, were they, nonetheless, honor bound as officers of the court to holler out before the baby crawled over the edge of

the well? Are we, in viewing this situation, permitted to exercise some discretion in application of waiver at the appellate level? *United States v. Britton*, 26 M.J. 24, 26–27 (C.M.A.1988).

In *Colon*, the Court of Military Appeals declined to apply waiver in a factual context with some similarity to that before us. Although the factual aspect was not discussed at length, it is clear enough from what was reflected in the opinion that the military judge in that case was also impatient and most eager to get the court-martial under way. Hard cases can come in many packages. We do not suggest that waiver should be cast aside at the slightest hint that trial defense counsel might have been cowed by an irritated military judge. However, neither should this possibility be disregarded if waiver, when applicable, is to be fairly evaluated by an appellate court. As should be clear from our prior discussion, consideration of waiver takes us well beyond what we consider to be the bottom line in this case. We believe it is not necessary that we reach this point. R.C.M. 805(b) speaks for itself.

Based on the foregoing we would set aside the findings of guilty and sentence and authorize an other trial. As we earlier suggested, we are more in agreement than we are in disagreement with much of what the majority opinion says. We echo Judge Blommers' observation that this issue should not have come before us. We in the dissent believe that the issue is one of first impression because of the Manual change. We also hope that this case becomes one of final and only impression whatever the eventual outcome.

MURDOCK, Judge (dissenting):

I concur with nearly everything in Senior Judge Lewis' dissent. However, I write separately to explain another compelling reason for finding that the panel in this case was improperly constituted.

First, I agree with Judge Lewis that the past rules and cases in this area have been superceded by the new provisions in the Manual. I am specifically impressed by the direction of the change in the Manual.

That is, the provision which once allowed a court-martial to proceed without some of the detailed members has been reworded for the current version of the Manual. Under traditional rules of statutory construction overt changes like that are accorded great deference as indicating a desire on the part of the drafters to change the rule. I would apply that principle to the changes to R.C.M. 805 which concern us here.

Second, and probably more importantly, I see a due process problem with the result reached by the majority. Simply stated, although the number of court members who actually heard the case was above the minimum required by the Code, fewer individuals on that court had to be convinced of the appellant's guilt or of a proper sentence than would have been required if the number of members ordered by the convening authority had heard the case.

This is why. The number of court members required to vote for findings and sentence is controlled by R.C.M. 921 and 1006, respectively. All of the court members must vote for a finding of guilty for offenses for which the death penalty is mandatory, while two-thirds must vote for a finding of guilty for all other offenses. The rule for voting on sentencing has one more subdivision. All of the court members must vote for a sentence which includes death, three-fourths must vote for a sentence which includes confinement for life or more than 10 years, and two-thirds must vote for any other sentence. In figuring these numbers, any fractions are rounded up to the next whole number. R.C.M. 921 and 1006, Discussion.

In the present case, the convening authority ordered eight members to sit on the court. Only six members actually sat on the court. In my view, this may have resulted in lessening the difficulty for the government in obtaining a conviction and may have had an effect on the sentence. Because this was not a case in which the death penalty was authorized, six members would have been required to vote for a finding of guilty if the eight members ordered by the convening authority to sit had all been present. On the other hand, since

only six actually sat, only four were required to vote for a finding of guilty. The same analysis and numbers apply to the sentence in this case. Although the percentages are the same no matter how many members actually sat, the raw numbers are different. Human nature being what it is, it is usually easier to convince a smaller number of people than a large number.

The burden on the government was reduced when fewer court members than the convening authority ordered to serve actually sat on this court-martial. It is true that the number who actually sat exceeded the minimum requirement for general courts-martial mandated by the Uniform Code of Military Justice. Article 29(b), UCMJ. However, in my view, when the convening authority chose to refer this case to a panel with more than the minimum number of members, he drew a new baseline for membership. For whatever reason, the convening authority thought the case should be heard by a panel of eight members unless the number was reduced for some authorized reason, such as dismissal for good cause by the military judge, or the action of proper challenges. Articles 29(a) and 41, UCMJ. Further, the UCMJ places the responsibility for designating the members by name on the convening authority. Article 25, UCMJ. The convening authority is not authorized merely to refer a case to a panel of eight unnamed officers, or eight officers to be named at some future time. As he was required to do, the convening authority in this case specifically designated eight officers to hear the appellant's case. Unless the convening authority or some other authorized official, such as the military judge, took some subsequent action to change the composition of the court, those officers should have heard the case.

The majority asks whether *United States v. Colon*, 6 M.J. 73 (C.M.A.1978) and *United States v. Allen*, 5 U.S.C.M.A. 626, 18 C.M.R. 250 (1955) are still good law. I believe these cases are in harmony with my position in this case. The Manual provision concerning absence of court members has changed since those cases were written. *Compare* R.C.M. 805 with MCM, 1969

(Rev.), para 41. The change rendered the discussion of the applicability of the law in those cases subject to question. The discussion of due process and waiver considerations, on the other hand, would seem to be as viable today as when it was written. In *Colon*, the Court found that the appellant's failure to object at trial had not waived his right to complain about the panel composition on appeal. The Court seems to have been particularly reluctant to apply a "waiver by silence" rule, preferring to find a waiver only after the judge questions the appellant about the possible waiver. 6 M.J. at 75.

Of course the Military Rules of Evidence brought with them a new philosophy which seemed to encourage waiver. *See* Mil.R. Evid. 103(d). Despite that, in my view, a denial of due process such as having a properly constituted court-martial is not the appropriate case in which to apply waiver. This is particularly true where, as here, the waiver if it occurred at all was a "waiver by silence." I would set aside the findings of guilty and the sentence and authorize a retrial.