**UNITED STATES, Appellee,**

v.

**Sergeant First Class Rubin F. LATIMER, 081–42–9202, United States Army, Appellant.**

**ACMR 8800843.**

U.S. Army Court of Military Review.

28 Feb. 1990.

For Appellant: Captain William J. Kilgallin, JAGC, Captain Timothy P. Riley, JAGC (on brief).

For Appellee: Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Gary L. Hausken, JAGC, Captain Patrick D. O'Hare, JAGC (on brief).

Before MYERS, JOHNSON and NEURAUTER, Appellate Military Judges.

## OPINION OF THE COURT

MYERS, Senior Judge:

Contrary to his pleas, appellant was convicted by special court-martial composed of officer members of violation of a lawful general regulation [1] (eight specifications)

---

1. U.S. Army Europe Reg. 632–10, Standards of Conduct and Fitness: Regulated Activities of Members of the US Forces, DOD Components, and Family Members, para. 17 (C1, 20 Nov. 1981) [hereinafter USAREUR Reg. 632–10] provides in pertinent part that:

Personnel will not:

and obstruction of justice (seven specifications) in violation of Articles 92 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 934 (1982) [hereinafter UCMJ or Code] respectively. His sentence, approved by the convening authority, included a bad-conduct discharge, forfeiture of $447.00 pay per month for six months, and reduction to Private E1. Before us appellant asserts that the evidence is insufficient to support his convictions of the obstruction of justice specifications, that the military judge erred in denying appellant's motion for findings of not guilty as to the obstruction of justice specifications, and that the military judge erred by excusing a court member *sua sponte.*

The witnesses for the government, each having been granted immunity, testified that appellant, their section chief in an artillery unit, prevailed upon them to purchase cartons of cigarettes for him in amounts up to those individuals' monthly rations.[2] Appellant used various excuses in persuading them to make such purchases. Specifically, he told Specialist (SPC) Marlar and Privates First Class (PFC) Hoisington and Payne that the cigarettes were for appellant's girl friend. He told PFC's Day and Robinson that the cigarettes were for appellant's girl friend's mother; told Private (PV2) Peil that he had lost his ration card; and told PFC Colunga

that he had used up his own cigarette ration for the month. All testified that after they had agreed to purchase the cigarettes for appellant, he drove them to the commissary in a privately owned automobile, gave them the money, and waited outside in the car while they purchased the cigarettes inside the commissary.[3] Thereafter, when these allegations were being investigated by the United States Army Criminal Investigation Command (CID), the witnesses testified that appellant approached each of them and asked them to withdraw or "pull" their statements. He suggested to PFC's Day and Colunga and to PV2 Peil that they could assert that they had been pressured or influenced by their respective chains of command to make statements. Appellant told PFC Colunga that it would hurt appellant and his family if Colunga did not withdraw his statement, and told SPC Corlew[4] that if the latter did not withdraw his statement, appellant would have to sell his bar in the United States and would not be able to retire in two years. SPC Marlar testified that appellant approached him twice, asking SPC Marlar on the first occasion to withdraw his statement and "plead the Fifth", and on the second occasion telling SPC Marlar to withdraw his statement or appellant would "slam" him for giving cigarettes to a German female acquaintance of SPC Marlar's. Testifying in his own

---

a. Barter, sell, or indirectly purchase rationed merchandise originally purchased from or through any sales facilities operated by or on behalf of the sending State forces (art. 1(d), NATO Status of Forces Agreement) in Europe. Nothing in this paragraph prohibits authorized purchasers from receiving actual reimbursement of the purchase price, without profit, for merchandise purchased from such sales facilities as a matter of economy, convenience, or necessity for other authorized purchasers, provided that the authorized maximum individual ration allowances of a person are not exceeded by this means and the procedure for obtaining extra rationed merchandise is not circumvented.

 \* \* \* \* \* \*

d. Purchase or possess goods acquired in such sending State sales facilities in excess of reasonable amounts.

 \* \* \* \* \* \*

j. Knowingly possess rationed merchandise obtained in violation of applicable regulations.

**2.** USAREUR Reg. 600–702, Personnel—General: Ration Policy (C2, 1 Oct. 1987), at Appendix C, Figure C–2, establishes a limit of four cartons of cigarettes per month, with provision for a supplemental ration of two cartons.

**3.** SPC Marlar testified that he purchased cigarettes for appellant on two occasions. The first time, appellant waited outside the commissary in the car. The second time, appellant went inside the commissary with SPC Marlar who, on that occasion, used his own money to purchase the cigarettes.

**4.** Appellant was acquitted of overpurchasing through SPC Corlew, but was convicted of obstruction of justice by asking SPC Corlew, like the others, to withdraw his statement.

behalf, appellant steadfastly denied all such allegations, contending that the soldiers who testified were all lying because of various grievances they had against him. He denied asking any of them to withdraw their statements, stating that he was not told and did not know who made such statements until he and his counsel were preparing for the Article 32, UCMJ, investigation.

## I. Sufficiency of the Evidence

### A.

■ Appellant asserts that the evidence is insufficient to convict him of obstructing justice as alleged in Specifications 1 through 7 of Additional Charge II. In that connection, we note first of all that appellant's testimony was diametrically opposed to that of the government's witnesses, thus presenting us with the threshold issue of credibility. All witnesses, including appellant, testified under oath and no one's testimony was impeached or otherwise seriously shaken by cross-examination or rebuttal. The military judge instructed the court-martial at length on the credibility of witnesses and instructed on the special considerations in evaluating accomplice testimony. Unfortunately for the appellant, the court members chose to believe the government's witnesses and not him.

> The members heard the testimony of the witnesses, observed the personal demeanor of each witness, and were in a superior position to judge the credibility of their testimony and to accept or reject it according to their judgment as to its truthfulness.

*United States v. Albright,* 26 C.M.R. 408, 411 (C.M.A.1958). *Accord, United States v. Snipes,* 18 M.J. 172 (C.M.A.1984); *United States v. Frierson,* 43 C.M.R. 292 (C.M.A.1971); *United States v. Anderson,* 26 M.J. 555 (A.C.M.R.1988); *United States v. Teeter,* 12 M.J. 716 (A.C.M.R.1981), *aff'd in part, rev'd in part,* 16 M.J. 68 (C.M.A.1983); *United States v. Evans,* 6 M.J. 577 (A.C.M.R.), *pet. denied,* 6 M.J. 239 (C.M.A.1978). Our review of the record reveals no reason to disagree with the members' determination as to credibility and because of their superior position after seeing and

hearing the witnesses in person, we will defer to their judgment. *Anderson,* 26 M.J. at 559.

### B.

Appellant argues that his requests to the soldiers concerned did not constitute obstruction of justice. He points out that with the exception of SPC Marlar, all witnesses testified that at no time did appellant threaten them in any way. He suggests that his requests to them were "nothing more than seeking sympathy from his accomplices in hope that they would not testify against him." With regard to SPC Marlar, appellant submits that he was only "reminding Marlar of the potential exposure of his own involvement in ration violations."

The elements of the offense of obstruction of justice are:

(1) That the accused wrongfully did a certain act;

(2) That the accused did so in the case of a certain person against whom the accused had reason to believe there were or would be criminal proceedings pending;

(3) That the act was done with the intent to influence, impede, or otherwise obstruct the due administration of justice; and

(4) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

Manual for Courts–Martial, United States, 1984, [hereinafter MCM, 1984 or Manual] Part IV, para. 96b.

■ The Manual further provides that "the offense may be based on conduct that occurred" prior to the preferral of charges and that "[a]ctual obstruction of justice is not an element" of the offense. *Id.,* para. 96c. "Examples of obstruction of justice include wrongfully influencing, intimidating, impeding, or injuring a witness...." *Id.* Here, the government's evidence established the first three elements of the offense; namely, that appellant contacted each of the potentially adverse witnesses (element (1)) while a criminal investigation

was ongoing against him (element (2)) and that he asked each of these witnesses to withdraw or "pull" their statements (element (3)). As for the final element:

> Wrongfully influencing, threatening or impeding a person who is expected to be a witness or a person who simply has the potential to be a witness, when done for the purpose of affecting testimony, is, *per se*, prejudicial to good order and discipline and inimical to the effective functioning of military justice.

*United States v. Caudill*, 10 M.J. 787, 789 (A.F.C.M.R.). *pet. denied*, 11 M.J. 342 (C.M.A.1981). Thus, we have no difficulty in finding that the actions of a leader who uses his subordinates to violate regulations, then asks them to help him conceal his misconduct, clearly constitute conduct prejudicial to good order and discipline and are of a nature to bring discredit upon the armed forces. This is not to say that an accused person or an individual under investigation can never talk to the witnesses against him. Indeed, assuming the truth of appellant's assertions that he was merely "seeking sympathy from his accomplices"[5] or simply reminding SPC Marlar of his own involvement in ration violations, there would arguably be no obstruction of justice. In *United States v. Wysong*, 26 C.M.R. 29 (C.M.A.1958), the accused was convicted, *inter alia*, of disobedience of his company commander's order "not to talk to or speak with any of the men in the company concerned with this investigation except in line of duty." *Id.* at 30. In an opinion authored by Judge Ferguson, the Court of Military Appeals held that the order was too broad and all-inclusive to be legal and, in any event, "severely restricted the accused's freedom of speech." *Id.* The court went on to opine that if the order in question "had been narrowly and tightly drawn and was 'so worded as to make it specific, definite, and certain,'" it might

have been sufficient to support a conviction." *Id.* at 31. Subsequently, in *United States v. Aycock*, 35 C.M.R. 130 (C.M.A. 1964), the accused was convicted of violating an order of his commanding officer not to talk to the woman with whom he was charged with committing adultery nor to her husband. *Id.* at 131. Again speaking through Judge Ferguson, the Court of Military Appeals held, citing *Wysong*, that the order was unlawful and unenforceable. *Id.* at 134. "[A]n accused may not, by means of military orders, be required not to contact the witnesses concerned with the charges against him." *Id.*[6]

Obviously, an accused would have a difficult time preparing his defense to the charges against him without communicating in some manner with adverse witnesses. Here, however, appellant's actions in approaching the witnesses and asking them to recant their stories and even providing them with proposed false excuses for doing so goes far beyond merely seeking their sympathy. Indeed, his contacts with those individuals are blatant and transparent attempts to persuade them to help him impede the ongoing investigation and thereby ultimately to frustrate the due administration of justice.

> Acts which are committed with the intent to frustrate the bringing of criminal charges can be as detrimental to the furtherance of military justice as is conduct which occurs subsequent to the pendency of a judicial proceeding.

*United States v. Tedder*, 18 M.J. 777, 779 (N.M.C.M.R.1984), *aff'd*, 24 M.J. 176 (C.M.A.1987) (accused officer, under investigation for unlawful fraternization with an enlisted woman, told the enlisted woman in question that their conduct would not be discovered if they kept their stories straight). *See also United States v. Simpkins*, 22 M.J. 924 (N.M.C.M.R.1986), *aff'd*, 24 M.J. 49 (C.M.A.1987) (accused, under

---

**5.** "[T]he offense of obstruction of justice under the *first clause of Article 134*, UCMJ, applies to communications between accomplices." *United States v. Rehak*, 25 M.J. 790, 792 (A.C.M.R. 1988), *pet. denied*, 27 M.J. 18 (C.M.A.1988) (emphasis in original).

**6.** Appellant herein testified that he was ordered by his commander not to "go near the Fist Platoon or anyone in the Fist Platoon until this is all cleared up, or until you get reinstated." Such order does not present an issue here since appellant was not charged with disobedience thereof.

investigation for larceny, asked two witnesses to make untruthful statements to criminal investigators).

We hold, therefore, that the evidence was sufficient beyond a reasonable doubt to convict appellant of obstruction of justice.

II. Motion for Finding of Not Guilty

Appellant next contends that the military judge erred by denying his motion for a finding of not guilty as to the obstruction of justice charge and its specifications made at the close of the government's case-in-chief. In support of the motion, the trial defense counsel argued that appellant

talked to the witnesses about withdrawing statements. There's no evidence that he attempted to influence their testimony here at the court-martial. Further, one element of the charge is that [appellant] had reason to believe or had knowledge of pending charges, and there's been no evidence of that element.

In denying the motion, the military judge commented:

... [F]irst, I will state that Rule for Courts–Martial 917(d) states that a motion for a finding of not guilty shall be granted only in the absence of some evidence which, together with all reasonable inferences and applicable presumptions, could reasonably tend to establish every essential element of an offense charged. The evidence shall be viewed in the light most favorable to the prosecution without an evaluation of the credibility of the witnesses.

So with that standard in mind, which is not beyond a reasonable doubt, the courts have found it to be if there is *less than a scintilla* of the evidence.

R. 162–163 (emphasis added).

Appellant points to the "scintilla" language in arguing that the military judge used an incorrect standard in deciding the motion. Appellant invites our attention to

MCM, 1984, Rule for Courts–Martial [hereinafter R.C.M.] 917(d) analysis, app. 21, at A21–59, which specifically cites in determining the relevant standard the United States Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)," and that "[t]he standard as announced in *Jackson* is not whether there is *any* evidence, but rather, 'whether there [is] sufficient evidence to justify a rational trier of the facts to find guilt beyond a reasonable doubt' (appellant's brief at 9–10)." Thus, appellant submits, the "scintilla" test does not satisfy the requirements of *Jackson*.

■ The record of trial does not indicate whether the military judge was actually reading from the Manual when discussing the standard to be used in deciding appellant's motion. Although the military judge was clearly correct in his recitation of the provisions of R.C.M. 917(d), his "scintilla" comment was clearly incorrect.

R.C.M. 917(d) provides that a motion for a finding of not guilty will be granted [o]nly in the absence of some evidence which, together with all reasonable inferences and applicable presumptions, could reasonably tend to establish every essential element of an offense charged. The evidence shall be viewed in the light most favorable to the prosecution, without an evaluation of the credibility of witnesses.

The Analysis of R.C.M. 917(d) provides: *Standard.* This subsection is based on the fourth sentence of the second paragraph of paragraph 71*a*, of MCM, 1969 (Rev.).[7] *See also Jackson v. Virginia*, 443 U.S. 307 [99 S.Ct. 2781, 61 L.Ed.2d 560] (1979); *United States v. Varkonyi*, 645 F.2d 453 (5th Cir.1981); *United States v. Beck*, 615 F.2d 441 (7th Cir. 1980).

*Id.* at A21–59.

The *Jackson* decision resulted from a petition for *habeas corpus* relief from peti-

7. Paragraph 71*a*, Manual for Courts–Martial 1969 (Rev. ed.) [hereinafter MCM, 1969] provides in pertinent part:
 If there is any evidence which, together with all inferences which can properly be drawn therefrom and all applicable presumptions, could reasonably tend to establish every essential element of an offense charged or included in any specification to which the motion is directed, the motion will not be granted.

tioner's conviction at a bench trial in a state court. The issue before the Court was the standard by which a state criminal conviction must be tested in a federal *habeas corpus* proceeding. The Court held that

[I]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 ... the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.

*Id.* 443 U.S. at 324, 99 S.Ct. at 2791–2792.

In *Varkonyi*, the 5th Circuit articulated its standard:

[T]he standard of review to be employed by this court [in ruling on a motion for acquittal] is whether viewing the evidence most favorably to the government, reasonable minds could conclude that it is inconsistent with any hypothesis other than the defendant's guilt.... The nature of the evidence, whether direct or circumstantial, is immaterial, since we must accept all credibility choices which tend to support the jury's verdict.

*Varkonyi*, 645 F.2d at 458.

Similarly, in *Beck* the 7th Circuit described its standard this way:

[W]hen ruling on a motion for acquittal the test the court must use is whether at the time of the motion there was relevant evidence from which the jury could reasonably find [the defendant] guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the Government ... bear[ing] in mind that "it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences."

*Beck*, 615 F.2d at 448 (citations omitted).[8]

Thus, the standard of review for motions for findings of not guilty in military practice is the same as that applicable in federal courts. We find the evidence of record not only sufficient to meet this standard, but sufficient to establish appellant's guilt beyond a reasonable doubt as well. *See* Section I, *supra*. Trial defense counsel's

stated bases for the motion are without merit in that it is not necessary that appellant attempted to influence the testimony of the witnesses at the court-martial. It is sufficient that he attempted to influence them during the CID investigation, the gravamen of the offense being the obstruction of the due administration of justice. *See United States v. Guerrero*, 28 M.J. 223 (C.M.A.1989); *United States v. Bailey*, 28 M.J. 1004 (A.C.M.R.1989). Likewise, contrary to trial defense counsel's assertions, the evidence establishes that appellant was aware of the ongoing investigation against him when he approached the witnesses and asked them to "pull" their statements. It is not necessary to constitute the offense that charges actually be pending. MCM, 1984, Part IV, para. 96c; *Guerrero*, 28 M.J. at 223. Accordingly, considering the prosecution's evidence in the light most favorable to the government, we hold that there was sufficient "relevant evidence from which the jury could find [the defendant] guilty beyond a reasonable doubt," *Beck*, 615 F.2d at 448. Thus, notwithstanding the military judge's unfortunate and misleading "scintilla" language, he correctly denied the appellant's motion for a finding of not guilty.

### III. Excusal of Court Member

Appellant further contends that the military judge erred by excusing a court member without good cause after assembly of the court. We agree that the military judge erred in that respect, but find the error nonprejudicial and, in any event, waived by appellant's failure to object thereto.

 After the preliminary Article 39(a), UCMJ, session at which appellant was arraigned and his pleas entered, the military judge called the court into session with the members present. The members were sworn and the military judge issued his preliminary instructions. During the course of the following *voir dire* the military judge asked whether any member knew of anything of a personal or professional nature that would prevent such member from giving his or her full atten-

---

**8.** It is noted that *Jackson* was not cited in either *Varkonyi* or *Beck*.

tion to the proceedings. Major (MAJ) S responded and the following colloquy took place:

> MAJ [S]: I have a required physical examination due tomorrow morning.
>
> MJ: Okay.
>
> \* \* \* \* \* \*
>
> Is that something that can't be changed, MAJ [S], or is it—
>
> MAJ [S]: I'd have to make a phone call to find out whether or not it can be changed. It may be.
>
> MJ: Okay.

*Voir dire* then proceeded, after which, in the absence of the members, both sides declined to exercise challenges for cause. The military judge thereupon returned to the subject of MAJ S:

> MJ: Well the court's trying to figure out what to do with MAJ [S] since he has a medical appointment tomorrow. I'm fully confident that this case is going to run over into tomorrow. The court believes it's in the best interest for both sides to excuse MAJ [S]. If I make him change his appointment to a later date it's.... Well, I don't know what the nature of the physical is or how long it's been set for. The court just feels that in the best interest of this case it will excuse Major [S] so that he can, in fact, make his physical tomorrow.
>
> TC: The government concurs, Your Honor.
>
> MJ: So, Government, do you have a peremptory challenge in this case?
>
> TC: No peremptory challenge from the government, Your Honor.
>
> MJ: Defense, would you like a moment to think about that?
>
> TDC: Yes, I would, Your Honor.
>
> MJ: I'll give you a couple of seconds.
>
> TDC: Your Honor, the defense would exercise its peremptory challenge against Lieutenant Colonel [C].
>
> MJ: Okay. Anything we need to take up before we bring the members in?
>
> TC: Nothing from the government, Your Honor.
>
> TDC: Nothing from the defense, Your Honor.

Shortly thereafter the court recessed, and the trial counsel advised Lieutenant Colonel (LTC) C and MAJ S of their excusal. When the court reconvened five members were present. The military judge noted the excusal of LTC C and MAJ S, announced the assembly of the court, and the trial proceeded with the remaining five court members. Based on this sequence of events the appellant argues that assembly of the court should have been announced prior to *voir dire* and challenges, thus excusal of members thereafter could be based only on challenges, physical disability, or good cause. Appellant argues that Major S's physical examination did not constitute good cause, therefore his excusal was not only improper but was jurisdictional error which was not waived. Accordingly, appellant submits that his conviction cannot stand.

Under Article 29(a) of the original Code, arraignment was the crucial point in the proceedings with regard to the absence or excusal of court-members:

> No member of a general or special court-martial shall be absent or excused after the accused has been arraigned except for physical disability or as a result of a challenge or by order of the convening authority for good cause.

Uniform Code of Military Justice, Pub.L. No. 506, § 1 (Art. 29(a)), 64 Stat. 107, 117 (1950).

Article 29(a), UCMJ, was thereafter amended to provide:

> No member of a general or special court-martial may be absent or excused *after the court has been assembled for the trial of the accused* except for physical disability or as a result of a challenge or by order of the convening authority for good cause.

Military Justice Act of 1968, Pub.L. No. 90–632, § 2(11), 82 Stat. 1335, 1337 (1968) [hereinafter Act] (emphasis added).

Chief Judge Everett explained the rationale for this change in *United States v. Dixon*, 18 M.J. 310 (C.M.A.1984):

> When Article 39(a), UCMJ, 10 U.S.C. § 839(a), was added in 1969 [sic], giving

new power and flexibility to the military judge (formerly the law officer), Congress anticipated that arraignments often would take place during pretrial hearings before the court members were present. Therefore, at this same time, Article 29(a) was amended to prescribe that a court-martial member not be "absent or excused *after the court has been assembled* for the trial of the accused...."

*Id.* at 313 (emphasis in original).

By its terms, however, the Act did not explain its creation of the "assembly" of the court-martial and did not specify at what point in the proceedings assembly would occur. In implementing this provision of the Act, the drafters of the MCM, 1969 merely provided that following administration of the oath to the personnel of the court-martial:

> [T]he military judge or the president of a special court-martial without a military judge *may* announce that the court is assembled. The court is assembled when, after the members have gathered in the courtroom to start the trial, the military judge or the president ... has announced that the court is assembled. In a court-martial consisting of a military judge alone, the court is assembled *at the time announced by the military judge.*

MCM, 1969, para. 61*j* (emphasis added).

In its present form, Article 29(a), UCMJ provides that:

> No member of a general or special court-martial may be absent or excused after the court has been assembled for the trial of the accused unless excused as a result of a challenge, excused by the military judge for physical disability or other good cause, or excused by order of the convening authority for good cause.

This provision was implemented, *inter alia,* in R.C.M. 505(c), 805(b), and 911, the latter of which merely provides that "[t]he military judge shall announce the assembly of the court-martial." R.C.M. 911 sought to depart from the blank check given the military judge by MCM, 1969 (Rev.), para. 61*j*, by providing that "[w]hen trial is by a

court-martial with members, the court-martial is *ordinarily* assembled immediately after the members are sworn." R.C.M. 911 discussion (emphasis added). Thus, by using the precatory term "ordinarily," the drafters of the MCM, 1984 were still loath to tie the military judge's hands too tightly. The drafters of that provision, however, whether wittingly or unwittingly, were prescient. Some five days after the effective date of the MCM, 1984, the Court of Military Appeals published its opinion in *Dixon.* There the military judge, after arraignment, *voir dire,* challenges, appointment of additional members, then more *voir dire* and challenges, recessed the court for the weekend. *Id.* at 311. A different military judge convened the court the following Monday and announced that he had been detailed to the court by the convening authority because the first military judge had gone on leave. The defense objected to this substitution of judges arguing that, although the first military judge had not announced assembly of the court, assembly should nevertheless have occurred and further, that the first military judge's leave did not constitute good cause for excusing him. *Id.* The new military judge overruled the defense objection, announced assembly of the court, and the trial proceeded. *Id.* The Court of Military Appeals held that, although Article 29(a), UCMJ, and MCM, 1969 (Rev.), paragraphs 61 and 62, *inter alia,* did not specifically so provide, reading all pertinent provisions of the Manual together, the implication was clear that assembly was intended to, and therefore did, occur prior to *voir dire* and challenges, regardless when or whether announced by the military judge. *Id.* at 314. The Court of Military Appeals also agreed that ordinary leave does not constitute good cause. Accordingly, the court "set aside any action which the court-martial took thereafter." *Id.* at 314. *See also United States v. Morris,* 49 C.M.R. 653 (C.M.A.1975).

■ In view of the *Dixon* rationale, assembly of the court in this case actually occurred before *voir dire* and challenges, and the military judge's announcement

thereof, coming as it did after *voir dire* and challenges, was a nullity. Accordingly, Major S could only be excused for physical disability or other good cause.

"Good cause" is defined in R.C.M. 505(f) to include:

> ... physical disability, military exigency, and other extraordinary circumstances which render the member, counsel, or military judge unable to proceed with the court-martial within a reasonable time. "Good cause" does not include temporary inconveniences which are incident to normal conditions of military life.

Thus, participation in a classified mission in a combat zone constitutes good cause, *United States v. Geraghty*, 40 C.M.R. 499 (A.B.R.1969), but participation in a live-fire exercise by a chief of a firing battery, *United States v. Garcia*, 15 M.J. 864 (A.C. M.R.1983), and ordinary leave, *Dixon*, 18 M.J. 310; *United States v. Boshears*, 23 C.M.R. 737 (A.F.B.R.1956), do not. Here, there was no indication that Major S's physical examination was anything other than routine. Indeed, he expressed his willingness to "make a phone call to find out whether or not it can be changed." We find, therefore, that Major S's physical examination was merely routine and constituted neither physical disability nor other good cause to justify his excusal from the court-martial.

■ That settled, we must now assess the effect of this error on this case. At the outset, we note that it is generally agreed that noncompliance with Article 29(a), UCMJ, is not jurisdictional error, *United States v. Colon*, 6 M.J. 73 (C.M.A.1978); *United States v. Ponder*, 29 M.J. 782 (A.C. M.R.1989), provided a quorum remains. *United States v. Malczewskyj*, 26 M.J. 995 (A.F.C.M.R.1988).

The Court of Military Appeals first addressed this issue in *United States v. Grow*, 11 C.M.R. 77 (C.M.A.1953). There, the president of the court-martial was relieved and reassigned after the first day of trial. Upon defense objection, an inquiry was initiated, after which the trial counsel announced that the president of the court had been relieved for "military exigency."

This apparently satisfied the defense and the objection was withdrawn. *Id.* at 81. The court, per Chief Judge Quinn, held that the relief of the president of the court was proper, that there was no prejudice to the accused, and found no improper command influence. *Id.* at 83. In doing so, however, the court issued the following mandate:

> Because the substitution of court members after arraignment is such a departure from the principles applicable to jury trials, and presents such a risk of abuse, we will view with circumspection any relief of a member after arraignment. *Records of trial should set forth in detail the basis of the absence or relief of any member and affirmatively establish that such absence or relief falls within the provisions of the Code.*

*Id.* (emphasis added).

This facially simple requirement proved difficult to implement. In the subsequent cases of *United States v. Boysen*, 29 C.M.R. 147 (C.M.A.1960); *United States v. Greenwell*, 31 C.M.R. 146 (C.M.A.1961); *United States v. Metcalf*, 36 C.M.R. 309 (C.M.A.1966); and *United States v. Boehm*, 38 C.M.R. 328 (C.M.A.1968), the court held that the record of trial did not contain sufficient explanation of the respective members' absences. The court's increasing frustration at the lack of such explanation was expressed by Judge Kilday in *United States v. Matthews*, 38 C.M.R. 430 (C.M.A.1968) wherein he remarked:

> This provision, implicit in the above-quoted provision in *Grow*, was again suggested in [*Boysen, Greenwell,* and *Metcalf*]. We are at a loss to understand the military's failure to grasp its significance. Failure to comply in future cases invites reversal.

*Id.* at 434.

A different approach was taken by Chief Judge Fletcher in *Colon*, 6 M.J. at 73, where four of the appointed ten members failed to appear for the court-martial. The court held that although the absence of that many members was not a jurisdictional error, it nevertheless was a deprivation of due process. *Id.* at 75. Further, the error was not waived by lack of objection

by the accused since there was no showing that the accused had knowingly waived his rights under Article 29(a), UCMJ, after having been advised thereof by the military judge. *Id.* In *United States v. Benoit,* 21 M.J. 579 (A.C.M.R.1985), although five of the appointed thirteen members were not present at assembly of the court, all were duly accounted for on the record. This court held, therefore, that inasmuch as there was no objection by the defense, the error was waived. More recently, in *United States v. Alexander,* 27 M.J. 834 (A.C. M.R.), *pet. denied,* 28 M.J. 354 (C.M.A. 1989), this court held that the unexplained absence of a court member was harmless:

> Whether a violation of this right [to have the convening authority choose the membership of the court] can be considered as harmless error depends on whether the change in court membership is so substantial that it does not represent the court contemplated by the convening authority. [*Colon,* 6 M.J. at 75]. A reduction in membership of forty or fifty percent has been held to be too fundamental to be "shrugged off" as harmless error. . . . But where, as here, the reduction in membership of the court involves only one member who was otherwise ineligible in any event and was caused by an administrative error, we have no hesitation in holding the error harmless.

*Id.* at 836 (citations and footnote omitted). *See also Malczewskyj,* 26 M.J. at 995 (unexplained absence of two members error, but waived by failure to object); *United States v. Campbell,* 26 M.J. 970 (A.C.M.R.1988) (unexplained absence of court member waived by failure to object).

▮▮▮ Here, we have already held that the excusal of Major S by the military judge was error. However, we further find that the error was not jurisdictional, and not so substantial that the panel which tried appellant's case "d[id] not represent the court contemplated by the convening authority." *Alexander,* 27 M.J. at 836. Further, the trial defense counsel's persistent refusal either to object to or concur with Major S's excusal, despite at least three opportunities to do so, and his challenging of another member after the military judge announced his intention to excuse Major S, waives any objection thereto. *United States v. Jones,* 23 M.J. 301 (C.M.A. 1987); *United States v. Negron,* 28 M.J. 775 (A.C.M.R.), *aff'd,* 29 M.J. 324 (C.M.A. 1989).

Appellant further argues that as originally assembled, the court was composed of seven members, thus requiring the concurrence of five members to convict. After the challenge of LTC C and the excusal of Major S, however, the court was reduced to five members, requiring four members to convict. Appellant submits that since it may be more difficult to achieve the concurrence of five members rather than four, he was prejudiced by this diminution in the number required to convict. We fail to understand that argument inasmuch as, mathematically, appellant derived a numerical advantage from the military judge's error. With a seven-member panel, five votes (73%) would have been required to convict, whereas with five members, four votes (80%) would have been required to convict. Conversely, just as seven members required a greater number to convict, seven members also would have required a greater number (three) to entertain a reasonable doubt to result in acquittal. Further, if appellant felt prejudiced by the excusal of Major S, he could have requested that an additional member be appointed to replace him. *Grow,* 11 C.M.R. at 77. Accordingly, we hold this assertion to be without merit.

The findings of guilty and the sentence are affirmed.

Judge JOHNSON and Judge NEURAUTER concur.